USCA1 Opinion

 

 May 18, 1995 [Not for Publication] [Not for Publication] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 94-1694 UNITED STATES, Appellee, v. WINSTON A. ABRAMS, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ John R. Gibson,* Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Gordon D. Fox with whom David A. Cooper and Cooper & Sanchez were _____________ _______________ ________________ on brief for appellant. Margaret E. Curran, Assistant United States Attorney, with whom ___________________ Ira Belkin, Assistant United States Attorney, and Sheldon Whitehouse, __________ __________________ United States Attorney, were on brief for appellee. ____________________ ____________________ _____________________ *Of the Eighth Circuit, sitting by designation. STAHL, Circuit Judge. Defendant-appellant Winston STAHL, Circuit Judge. _____________ Abrams appeals the denial of his motion to dismiss an indictment charging illegal reentry of a deported alien under 8 U.S.C. 1326(b)(1).1 We affirm. I. I. __ FACTUAL AND PROCEDURAL BACKGROUND FACTUAL AND PROCEDURAL BACKGROUND _________________________________ Abrams, a citizen of Guyana, entered the United States in February 1981 on a six-month tourist visa. After the visa expired, he remained in the United States and, over the next five years, was convicted of several crimes, including robbery. During this period, Abrams, who speaks and reads English, briefly attended college. In 1986, Abrams filed for an adjustment of status seeking to become a lawful permanent resident. By decision dated January 7, 1987, the Immigration and Naturalization Service (INS) denied Abrams's petition, but permitted him to leave the country voluntarily, thus avoiding deportation proceedings. Notwithstanding this concession, Abrams chose not to leave. In July 1987, Abrams and Andrea Gardner, whom he never married, had a son who is a United States citizen. In  ____________________ 1. In pertinent part, 1326 provides that any alien who has been arrested and deported and later reenters the United States without the Attorney General's consent shall be fined or imprisoned, or both. 8 U.S.C. 1326(a). An alien whose deportation "was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)," shall be fined or imprisoned not more than ten years, or both. 8 U.S.C. 1326(b)(1). -2- 2 October 1988, a New York state court convicted Abrams2 for criminal possession of a weapon, criminal possession of stolen property, and bail jumping. In October 1989, while incarcerated in New York state prison, Abrams married Angela Morgan, a United States citizen, with whom he had been living prior to the 1988 conviction. On March 13, 1990, while Abrams was still in prison, the INS instituted deportation proceedings against him.3 Two deportation hearings, both held at the Downstate Correctional Facility in Fishkill, New York, followed. Because the events at these hearings are central to this appeal, we recount them in some detail. At the first hearing, held May 22, 1990 ("May hearing"), the immigration judge advised Abrams as follows: All right, Mr. Abrams, at this proceeding, you have the right to be represented by an attorney at your own expense. If you cannot afford a lawyer or obtain a lawyer, you should have been, ah, presented with a list of free legal services, as well as your appeal rights.  ____________________ 2. The state indictment named the defendant as Perry Gaul, an alias used by Abrams. 3. The Order to Show Cause and Notice of Hearing charged two grounds for deportation: (1) remaining in the United States for a longer time than permitted following admission as a non-immigrant in violation of what now appears at 8 U.S.C. 1251(a)(1)(B), and (2) conviction of two crimes involving "moral turpitude not arising out of a single scheme of criminal misconduct" in violation of 8 U.S.C. 1251(a)(2)(4)(ii). -3- 3 At some point during the hearing, Abrams was given the notice of his appeal rights.4 Abrams then indicated that he wished to retain counsel. The immigration judge continued: The list I gave you sir, if you have a problem getting a lawyer, you can try and get someone on that list to represent you and it has your appeal rights included, just in case you have to represent yourself. The immigration judge advised Abrams of the nature of the charges against him, and Abrams indicated that he understood. The judge then asked Abrams whether he was married, to which Abrams answered in the affirmative. Abrams also told the judge that he had a three-year-old son. The judge then stated: [T]here may be some relief that you might be able to apply for, but I would suggest you have your lawyer here, or otherwise we may be compelled to go ahead, even though you're unrepresented. The hearing was continued until July 10, 1990 ("July continuance"). Unable to retain private counsel, Abrams obtained -- on the date of the continuance -- the  ____________________ 4. Abrams later testified that he received a form that appeared to be similar to INS form I-618. Form I-618 is a one-page document explaining procedures to appeal from an immigration judge's decision. The notice is captioned: WRITTEN NOTICE OF APPEAL RIGHTS Your Appeal Rights Read This Notice Carefully __________________________ (emphasis in original). -4- 4 services of Attorney Lindsey Collins, whose name appeared on the free legal services list. Abrams and Collins met for ten to fifteen minutes prior to the hearing. After the hearing commenced, Abrams acknowledged that Collins was representing him. During a colloquy between Abrams and the judge, Abrams admitted that: (1) he was a citizen of Guyana; (2) had entered the country on a six-month tourist visa; (3) had remained in the United States without permission of the INS after the agency permitted him to leave voluntarily; and (4) a New York state court had convicted him on charges of criminal possession of a weapon and possession of stolen property. The immigration judge then said to Abrams: [D]o you understand, based on what you have told me, based on what your attorney has told me and based on the record presented, it appears that you are deportable from the United States for the reasons that I have indicated. And, ah, since you are not seeking any application for relief, I would have no choice but to enter an order ordering you [sic] deportation from the United States back to Guyana. Do you understand that sir? Abrams responded, "yes." The immigration judge addressing Attorney Collins asked, "Mr. Collins, on behalf of your client, are you willing to accept such a decision as a final decision?" Collins responded, "I do, I do your Honor." The deportation order issued on July 10, 1990. Abrams did not appeal the order, nor did he request an adjustment in status. -5- 5 On April 3, 1992, Abrams was deported from the United States. Subsequently, he reentered the United States without permission. On August 31, 1993, he was arrested by East Providence, Rhode Island, police for obstruction and filing a false report, crimes for which he was convicted. The indictment in this case then issued. On the day of jury impanelment, Abrams filed a motion to dismiss the indictment on the basis that the original deportation proceeding was fundamentally unfair because he did not know he had a right of appeal or alternative relief. On February 1, 1994, the district court held an evidentiary hearing on the motion at which Abrams testified. Abrams acknowledged the receipt of a form dealing with appeal rights. He also acknowledged that, at the time he had the form, he knew it dealt with his appeal rights. He testified that he had the form in his possession for several hours, but he said that he lost it during his transport from Fishkill back to the Clinton Correctional Facility where he was serving his sentence. He further testified that he made no effort to obtain a new copy. Abrams also acknowledged that he understood what the immigration judge meant when he asked whether Abrams accepted the decision as final and Attorney Collins answered that he did. The day following the hearing, the district court determined that Abrams "was fairly apprised of his right to appeal . . . [and] that he -6- 6 understood that he had the right to appeal." On that basis, the district court denied his motion to dismiss the indictment. On March 3, 1994, Abrams entered into a conditional plea agreement with the government, reserving his right to appeal the district court's denial of his motion to dismiss. Entry of plea and sentencing followed. II. II. ___ DISCUSSION DISCUSSION __________ In a prosecution brought under 8 U.S.C. 1326, the government must prove that the defendant was previously deported. See 8 U.S.C. 1326(a)(1). In United States v. ___ _____________ Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court made _____________ clear that due process requires that before a deportation order may be used in a subsequent criminal proceeding, that order must have been subject to judicial review. Specifically, the Court stated that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of the criminal offense." Id. at 839. In Mendoza-Lopez, the aliens were, in ___ _____________ effect, denied a direct appeal because they were given inadequate notice of the right to appeal. The government -7- 7 asked the Court to "assume that the respondents' deportation hearing was fundamentally unfair." Id.  ___ We conclude Abrams's collateral attack must fail because he cannot show that there were "defects . . . foreclos[ing] judicial review," that is, there was no denial of his right to appeal.5 Abrams's principal argument is that he was not advised of his right to appeal and, consequently, there could be no "considered and intelligent" waiver that right.6 We do not agree. Abrams acknowledges receiving the written notice of appeal rights during the May  ____________________ 5. We note that our sister circuits have uniformly interpreted Mendoza-Lopez to require a showing that defendant _____________ was both denied his right to appeal the deportation order and that he was actually prejudiced by fundamental unfairness in the underlying proceeding. See, e.g., United States v. ___ ____ _____________ Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir. 1994) (collecting ______________ cases). See also United States v. Fares, 978 F.2d 52, 57 (2d ___ ____ _____________ _____ Cir. 1992) ("If we find no fundamental unfairness, and we therefore conclude that a fully informed exercise of the right of direct appeal would have yielded the alien no relief from deportation, the deportation order may be used to establish conclusively an element of a criminal offense.") (citing cases). Because Abrams fails on the first step, we need not consider prejudice. 6. To help put this case in perspective, we reiterate two important points. First, deportation proceedings are not criminal actions. United States v. Bodre, 948 F.2d 28, 31 _____________ _____ (1st Cir. 1991), cert. denied, 503 U.S. 941 (1992). A _____ ______ deportation proceeding is a purely civil action to determine eligibility to remain in this country, and not to punish unlawful entry. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 ___ _____________ (1984). Accordingly, many of the procedural protections required in criminal proceedings simply do not apply in this context. See, e.g., id. at 1038-39. Second, as with ___ ____ ___ criminal proceedings, see, e.g., Jones v. Barnes, 463 U.S. ___ ____ _____ ______ 745, 751 (1983), there is no constitutional right to appeal an adverse deportation order. The right is purely statutory. -8- 8 hearing and, as required by applicable INS regulations,7 the immigration judge ascertained that Abrams had, in fact, received the notice.8 Abrams, an English speaker with some college education, further acknowledges having the notice for several hours before misplacing it. Abrams, however, focuses on the tail end of the colloquy between the immigration judge and Attorney Collins during the July continuance at which point the judge asked: "[O]n behalf of your client, are you willing to accept such a [deportation order] as a final decision?" Collins responded: "I do, I do your Honor." Abrams contrasts that exchange with the facts in United States v. Fares, 978 F.2d 52, 56 (2d Cir. _____________ _____ 1992). In Fares, the immigration judge asked the defendant: _____ "And you're accepting orders of deportation to Lebanon as final in your case with no appeal?" Id. at 57. The Fares ___ _____ court concluded that, although it was a "close question," the quoted statement alone was an insufficient basis upon which to conclude that the defendant had waived his right to appeal. Id. at 56-57. Importantly however, unlike Fares, ___ Abrams received written notice of the right to appeal.  ____________________ 7. 8 C.F.R. 242.16 requires, in part, that the immigration judge "shall . . . advise respondent of the availability of free legal services . . . [and] ascertain that the respondent has received a list of such programs, and a copy of Form I- 618, Written Notice of Appeal Rights." 8. In fact, at the May hearing, the immigration judge twice mentioned that the appeal form contained his "appeal rights." -9- 9 Several other facts undermine Abrams's contention that he had no notice of his right to appeal. First, at the May hearing, the immigration judge specifically advised Abrams that "there may be some relief that you might be able to apply for." Second, at the July continuance, the judge stated that since Abrams was "not seeking any application for relief," the only option was to issue the deportation order. Third, as Abrams later testified, he fully understood the implication of Collins's response regarding the finality of the decision. Thus, in addition to the written notice of appeal, the immigration judge made at least three direct or indirect references to the right to appeal the deportation order or to seek alternative relief.9 Abrams waived his rights when he failed to file a timely appeal. On the basis of the record, we conclude that Abrams made his waiver after receiving sufficient notice of his rights. Accordingly, we conclude that there was no denial of Abrams's rights and, consequently, his collateral attack on the July 10, 1990, deportation order fails.10  ____________________ 9. We also note that having sought an adjustment in status in 1986, Abrams had some familiarity with INS procedures. 10. Abrams also argues that he was not notified that he could contact the Guyanese consulate as required by 8 C.F.R. 242.2(g) ("Every detained alien shall be notified that he may communicate with the consular or diplomatic officers of the country of his nationality in the United States."). This is an issue properly addressed on direct appeal. See, e.g., ___ ____ Waldron v. INS, 17 F.3d 511, 515 (2d Cir. 1993), cert. denied _______ ___ _____ ______ 115 S. Ct. 572 (1994). Since we hold that there was no -10- 10  ____________________ denial of a direct appeal, Abrams waived consideration of this issue. -11- 11 III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the decision of the district court is affirmed. affirmed. ________ -12- 12