**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Agripino ESPINOZA–FARLO,
Defendant–Appellant.**

**No. 93–3867.**

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1994.

Decided Sept. 1, 1994.

Cheryl B. Schacht, Asst. U.S. Atty., Madison, WI (argued), for plaintiff-appellee.

Margaret Danielson, Madison, WI (argued), for defendant-appellant.

Before ESCHBACH, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Agripino Espinoza–Farlo was indicted on one count of illegally re-entering the United States after having been convicted of an aggravated felony offense and deported. (8 U.S.C. § 1326(a), (b)(2)).

Following his entry of a not guilty plea, Espinoza–Farlo moved to suppress his post-arrest statements on the ground that he did not knowingly and intelligently waive his *Miranda* rights. He also moved to dismiss the indictment on the ground that his prior deportation hearing was fundamentally unfair. The district court denied both of Espinoza–Farlo's motions.

Espinoza–Farlo then changed his plea to guilty, pursuant to a written plea agreement. In the plea agreement, Espinoza–Farlo preserved his right to appeal the district court's decision denying the two motions. The court sentenced him to seventy-seven months imprisonment. He now appeals.

The sole issue in this case is whether Espinoza–Farlo's conviction must be reversed because the administrative hearing leading to his deportation, which in turn constituted a material element of his conviction, was fundamentally unfair and deprived him of due process.[1]

In *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court held that a defendant prosecuted under 8 U.S.C. § 1326 for illegal entry following deportation may, in his criminal proceeding, collaterally attack the deportation order underlying his offense. In that case, the respondents were arrested by the Immigration and Naturalization Service, and given a group deportation hearing with eleven other Mexican nationals. At the hearing, the respondents were informed of their right to counsel; however, they were not adequately informed of their rights either to apply for a suspension of deportation or to appeal the Immigration Judge's decision. After the hearing, the respondents were ordered deported. Less than two months later, both respondents were again arrested in the United States. They were subsequently charged with violating 8 U.S.C. § 1326.

With regard to the respondents' collateral challenge of the deportation hearing, the Supreme Court stated that "where the defects in an administrative hearing proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Mendoza–Lopez*, 481 U.S. at 838, 107 S.Ct. at 2155 (footnote omitted). The Court concluded that therefore, "a collateral challenge to the use of a deportation proceeding ... must be permitted where the deportation proceeding effectively eliminates the right to judicial review." *Id.* at 839, 107 S.Ct. at 2156.

An unusual procedural twist, however, rendered the scope of the *Mendoza–Lopez* decision unclear: the government in that case asked the Court to assume that the defendant's deportation hearing was fundamentally unfair in considering whether collateral attack of the hearing was permissible. Thus, when the Court decided that the respondents' deportation order could not be used to prove an element of a criminal offense, it did not explicitly address whether to prevail, a defendant must, after showing that he was deprived of judicial review, make the addi-

---

1. Although appellant has briefed and argued the *Miranda* suppression issue to this court, we do not address it in our opinion. We have considered appellant's argument and determined that because Espinoza–Farlo formally concedes that the failure to suppress his post-arrest statements was harmless, the *Miranda* issue bears no relevance to our disposition of this case.

tional showing that his deportation hearing resulted in fundamental unfairness to him.[2]

Appellate courts attempting to divine an answer to the fundamental unfairness question from the *Mendoza–Lopez* decision have been unanimous in the view that the Court's decision anticipates a two-step analysis for determining whether a defendant can successfully prevent his deportation from being used as a basis for a section 1326 conviction. *See United States v. Meraz–Valeta*, 26 F.3d 992 (10th Cir.1994); *United States v. Lopez–Vasquez*, 1 F.3d 751, 755–56 (9th Cir.1993) (citing *United States v. Proa–Tovar*, 975 F.2d 592 (9th Cir.1992)); *United States v. Fares*, 978 F.2d 52, 56–57 (2d Cir.1992); *United States v. Encarnacion–Galvez*, 964 F.2d 402, 406 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 391, 121 L.Ed.2d 299 (1992); *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir.1989); *United States v. Santos–Vanegas*, 878 F.2d 247, 251 (8th Cir. 1989).

■ We agree with the approaches of our sister circuits and adopt a two-step analysis. We hold that for a section 1326 defendant to successfully prevent his underlying deportation from being used to prove an element of a criminal offense, the defendant must first show that the deportation hearing effectively foreclosed his right to direct judicial review of the deportation order. Second, he must show that the deportation hearing was fundamentally unfair. In other words, he must show that he was prejudiced by the Immigra-

tion Judge's failure to inform him of his rights to seek a suspension of deportation or to appeal, because an informed exercise of those rights would have yielded him relief from deportation. If he cannot make either one of these showings, the deportation order may be used to establish an element of a criminal offense.

■ Espinoza–Farlo argues that he was not properly advised of his right to appeal, and that even if he was, he could not have knowingly and intelligently waived those rights because he is borderline mentally retarded. We, however, need not reach the issue of whether Espinoza–Farlo was effectively foreclosed from exercising his right to direct judicial review of the deportation order,[3] because he does not even profess to have been prejudiced by those proceedings. Instead, he urges us only to adopt a rule that no prejudice need be shown to prevent his deportation order from being used to prove an element of the government's case.

Espinoza–Farlo was correct not to argue to this court that he could show prejudice. He admits that he was in the United States illegally at the time of his deportation. Because his underlying criminal conviction was for a drug felony, he was guilty of an "aggravated felony" and would be "conclusively presumed to be deportable from the United States." 8 U.S.C. §§ 1101(a)(43) & 1252a(c). Thus, Espinoza–Farlo would have had no

---

2. The Court's opinion contains statements that would support both sides of the fundamental unfairness issue. For example, the Court states that it "decline[s] at this stage to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review, *requiring that the result of the hearing in which they took place not be used to support a criminal conviction.*" 481 U.S. at 838 n. 17, 107 S.Ct. at 2155 n. 17 (emphasis added). And again, that "[i]f the violation of respondents' rights that took place in this case amounted to a *complete deprivation of judicial review* of the determination, that determination may not be used to enhance the penalty for an unlawful entry under § 1326." *Id.* at 840, 107 S.Ct. at 2156.

However, the Court made these two statements under the assumption that the deportation hearing was fundamentally unfair (specifically, that the respondents were not advised of their "eligibility to apply for a suspension of deportation."

*Id.*) Thus, significantly, the Court concluded that "[b]ecause respondents were deprived of their rights to appeal, *and* of any basis to appeal since the only relief *for which they would have been eligible* was not adequately explained to them, the deportation proceeding in which these events occurred may not be used to support a criminal conviction."

3. We observe, however, that the Immigration Judge in this case did inform the deportees that they had a right to be represented by an attorney, and required each person at the hearing to stand to indicate that he wanted to proceed pro se. Furthermore, the Immigration Judge ascertained that each deportee had received a copy of a legal aid list and written appeal rights. Lastly, the deportees were not asked to engage in a mass silent waiver of their appeal rights. Instead, the Immigration Judge required each deportee to say, "I appeal" or "I accept," to indicate whether the deportee accepted the judge's decision or desired an appeal.

chance of winning an appeal of the Immigration Judge's decision.

 Moreover, Espinoza–Farlo was statutorily ineligible for suspension of deportation, *id.* § 1254(a)(1); voluntary departure, *id.* § 1254(e); or registration as a permanent resident alien, *id.* § 1182(a)(2), (c); again because of his felony conviction.[4] In short, he would have been deported no matter what. Because he could not have made a showing that the procedures used at his deportation hearing prejudiced him in any way, we conclude that the deportation order was properly used to establish an element of Espinoza–Farlo's criminal offense.

For the foregoing reasons, Espinoza–Farlo's conviction is AFFIRMED.

---

**4.** Espinoza–Farlo would not have been eligible for any of these forms of relief from deportability because his two year drug sentence precludes him from making the requisite showing of "good moral character." 8 U.S.C. § 1101(f)(7).