In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3947

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MISEAL ROQUE-ESPINOZA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 845—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED JANUARY 6, 2003—DECIDED JULY 30, 2003

Before POSNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* After spending all but the first eight months of his life in the United States, Miseal Roque-Espinoza was removed from the United States and sent back to his native Mexico in July 1998, after serving time in prison for marijuana distribution and attempted murder. Roque-Espinoza illegally re-entered the United States some time in 1999 and was arrested for drunk driving in October 2000. His arrest alerted the immigration authorities to his return, and it was not long thereafter that he was charged with violating 8 U.S.C. § 1326(a) and (b)(2). Roque-Espinoza first pleaded guilty

to the charge against him, but then he filed a motion to withdraw his guilty plea in light of the Supreme Court's intervening decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). The district court denied the motion and sentenced Roque-Espinoza to a term of 72 months followed by three years of supervised release. We affirm.

## I

Roque-Espinoza was released from the Illinois Department of Corrections after serving three years for drug distribution and attempted murder. As we noted, Roque-Espinoza had lived in the United States since infancy. Nevertheless, he is not a United States citizen, and he suffered the normal consequence of removal (given the nature of his crimes of conviction) in 1998 after he was released from prison.

We have gleaned certain facts about the proceedings that led up to Roque-Espinoza's 1998 removal from the transcripts and the government's filings in the district court. Unfortunately, the record on appeal does not contain tape recordings or a transcript of Roque-Espinoza's removal hearings, and so we are unable to verify exactly what transpired there. We understand, however, that the tapes were available to the parties in the district court proceedings on this matter, and Roque-Espinoza does not now contest the government's characterization of those proceedings, on which we rely in what follows.

Roque-Espinoza was removed following a hearing conducted by an Immigration Judge (IJ) during which he was represented by a lawyer (whom he had obtained after the IJ granted two continuances for that purpose). After the IJ ruled at the merits hearing that Roque-Espinoza was to be removed, Roque-Espinoza's lawyer asked the IJ to grant his client discretionary relief from removal under § 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c)

(1994) (repealed). The IJ denied that request because he believed that the legislation making such relief available had been repealed. Nonetheless, the IJ informed Roque-Espinoza of his right to appeal the removal order, and Roque-Espinoza's lawyer indicated that his client would take an administrative appeal from that order. Despite this representation, however, he never did so.

Prior to being removed, Roque-Espinoza was warned that he could re-enter the United States only with the permission of the Attorney General. This warning obviously made little impression on him, because a short time later, sometime in 1999, he surreptitiously returned to the United States. Once back, he failed to keep a low profile; instead, he was arrested on October 14, 2000, by the Bellwood, Illinois, police for drunk driving. That arrest set in motion the chain of events that led to federal charges of unlawful re-entry in violation of 8 U.S.C. § 1326(a) and (b)(2), which is the statute that makes it a crime for an alien to enter the United States following an earlier denial of admission, exclusion or removal without the permission of the Attorney General. It is uncontested that Roque-Espinoza did not seek permission from the Attorney General prior to re-entering the United States. Roque-Espinoza pleaded guilty to these charges on May 10, 2001.

Three and one half months after Roque-Espinoza entered his guilty plea, his lawyer sought permission from the court to withdraw the plea. His reason was that the Supreme Court's decision in *St. Cyr*, which was rendered after his guilty plea, demonstrated that his earlier removal in 1998 could not as a matter of law serve as a predicate for the § 1326 conviction. *St. Cyr* held that the repeal of § 212(c) discretionary relief from removal contained in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), does not apply retroactively to defendants who pleaded guilty to criminal charges prior to the act's passage.

533 U.S. at 326. Roque-Espinoza had pleaded guilty on June 15, 1995, to the state drug and attempted murder charges that had first landed him in state prison and then supported his 1998 removal. Roque-Espinoza argues that *St. Cyr* establishes that his 1998 removal was invalid because it was premised on the IJ's erroneous advice that he was ineligible for discretionary relief from removal. In fact, he continues, it is now clear that he was eligible to apply for such relief given the date of the state guilty plea. If he can strike down the 1998 removal, his § 1326 charges are also unsupported, because the 1998 removal is an essential element of the § 1326 offense. The district court, however, found that *St. Cyr* did not effect a change in the law that could help Roque-Espinoza. It denied his motion to withdraw the guilty plea on October 11, 2001, and sentenced him to 72 months' imprisonment on November 1, 2001.

## II

The Federal Rules of Criminal Procedure allow a defendant to withdraw a guilty plea for "a fair and just reason." *United States v. Bennett*, 332 F.3d 1094, 1099 & n.1 (7th Cir. 2003) (citing FED. R. CRIM. P. 11(d)(2)(B)).[1] Nonetheless, this is a narrow escape hatch from a plea entered following a proper Rule 11 colloquy. See, *e.g.*, *Bennett*, 332 F.3d at 1099 (explaining guilty plea following Rule 11 colloquy enjoys "presumption of verity"); *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001); *United States v. Gomez-Orozco*, 188 F.3d 422, 425 (7th Cir. 1999). Roque-Espinoza bears the burden of showing that a fair and just

---

[1] As this court explained in *Bennett*, 332 F.3d at 1099 & n.1, the Federal Rules of Criminal Procedure were amended in 2002, and the rule authorizing defendants to seek the withdrawal of a guilty plea prior to sentencing was moved from FED. R. CRIM. P. 32(e) to FED. R. CRIM. P. 11(d)(2)(B). The substance of the rule has not changed.

reason exists for the withdrawal of his guilty plea, *United States v. Parker*, 245 F.3d 974, 976 (7th Cir. 2001), and we review the district court's decision denying his motion to withdraw his guilty plea for an abuse of discretion, *Bennett*, 332 F.3d at 1099.

Roque-Espinoza urges us to find just such an abuse of discretion in the district court's ruling. In his view, *St. Cyr* establishes that the IJ erred in finding him ineligible for discretionary relief from removal. This error, he continues, is enough by itself to invalidate his original removal. If he is entitled to present his arguments on the merits of that removal in this collateral attack, and he persuades us that *St. Cyr* indeed has the effect he claims, then he asserts that he has a winning defense to the charge of illegal re-entry in violation of § 1326. In making this argument, Roque-Espinoza also invokes the Supreme Court's decision in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), which held that in order to rely on a prior deportation as an element of the crime of unlawful re-entry, the proceedings leading up to a deportation (as removal was then called) must comport with principles of due process. *Id.* at 837. The IJ's mistake here, he concludes, was so serious that it tainted the entire removal proceeding and caused it to fall short of the due process to which he was entitled.

We pause at the outset to reject the "waiver" argument that the government advances in response to Roque-Espinoza's appeal. (The government uses the term "waiver" in its brief, but we think the more accurate characterization of the argument it presents is forfeiture.) The government asserts, in effect, that Roque-Espinoza has forfeited the argument that he presses on appeal because he failed to develop it fully before the district court. It seizes on the fact that Roque-Espinoza's motion to withdraw his guilty plea and memorandum of law in support of that motion did not in so many words allege a due process violation at his re-moval hearings or that he was deprived of the opportunity

to seek judicial review of the removal order. In the government's view, these shortcomings in Roque-Espinoza's filings before the district court mean that he has forfeited his right to pursue this claim on appeal.

No one would call Roque-Espinoza's motion to withdraw his guilty plea and the supporting memorandum models of trial advocacy, but that does not mean that they were so wanting that we should find forfeiture. At worst, the arguments he is presenting now were woefully underdeveloped. But Roque-Espinoza did indicate that he was trying to make a collateral attack on the IJ's 1998 removal order on the basis of a violation of his due process rights at the removal hearing. His motion to withdraw his guilty plea and the supporting memorandum of law cited the Supreme Court's decisions in *St. Cyr* and *Mendoza-Lopez*. The district judge was plainly able to discern from Roque-Espinoza's filings that he was relying on a combination of *Mendoza-Lopez* and *St. Cyr* to attack his 1998 deportation. We therefore reject the government's argument and move on to the merits.

In *United States v. Mendoza-Lopez*, the Supreme Court did not offer specific guidance about the minimal due process requirements for a deportation proceeding. It did, however, describe why the proceedings at issue there fell short of the constitutional guarantees. The Court found that the circumstances surrounding Mendoza-Lopez's deportation—that he was deported following a mass deportation proceeding during which he did not knowingly and intelligently waive his right to appeal, and during which he was not informed of his right to seek discretionary relief from deportation—"amounted to a complete deprivation of judicial review of the determination." *Id.* at 840. Therefore, the Court reasoned, Mendoza-Lopez's deportation could not be used to establish an element of a subsequent offense. *Id.* at 842.

Reasoning from the holding in *Mendoza-Lopez*, this court has since held that to attack a deportation or removal collaterally in a § 1326 case, the defendant must first show that the underlying order was the result of a "deportation hearing [that] effectively foreclosed his right to direct judicial review of the deportation order," and then establish that "the deportation hearing was fundamentally unfair." *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994); see also *United States v. Jackson*, 93 F.3d 335, 338 (7th Cir. 1996) (applying *Espinoza-Farlo* test). Other circuits have taken a similar approach. See *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 & n.8 (5th Cir. 1999) (collecting cases). In 1996 Congress amended § 1326 to provide a means for collaterally attacking removals on which the government seeks to rely to establish § 1326 violations. Section 1326(d) tracks the test employed in this circuit with the important addition of an administrative exhaustion requirement. The statute now authorizes a collateral attack on an underlying removal if the following three conditions are met: (1) the alien has exhausted the administrative remedies that offer relief from the removal order; (2) the removal order was the result of proceedings that deprived the alien of an opportunity for judicial review; and (3) a showing of fundamental unfairness. 8 U.S.C. § 1326(d)(1)-(3).

Several of our sister circuits have held that because § 1326(d)'s three requirements are stated in the conjunctive, they are mandatory and thus a defendant must satisfy all three in order to prevail in her collateral attack. *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir. 2003); *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002). The Ninth Circuit might have qualified that position—but perhaps it did not—when it added that "[t]he exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport

with due process." *United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). *Muro-Inclan* may only be making the general point that a fundamental fairness problem will arise if one of the three required elements fails for due process reasons. We have no need to decide whether there is a distinction with a difference between the Ninth Circuit and the others, because as we now explain, Roque-Espinoza did fail to exhaust, and the circumstances of his failure do not come close to raising a due process issue.

It is undisputed that Roque-Espinoza did not pursue an appeal of the IJ's deportation order with the Board of Immigration Appeals (BIA). It is also clear that both he and his lawyer were informed of his right to pursue such an appeal and that his lawyer indicated that his client would appeal the IJ's decision. Roque-Espinoza's only response to these otherwise damaging facts is to argue that he should have been excused from administrative exhaustion on futility grounds. At the time the IJ decided Roque-Espinoza's case, the BIA had taken the position that the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) repealing § 212(c) discretionary relief applied retroactively. See AEDPA, Pub. L. No. 104-132, 110 Stat. 1214, 1277; *In re Soriano*, 21 I. & N. Dec. 516, 519, 1996 WL 426888 (Op. Att'y Gen. June 27, 1996). An administrative appeal would thus have been futile, he argues, and under those circumstances the statutory exhaustion requirement should be excused. There is some support for this position in our cases, see, *e.g.*, *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002) (exhaustion of administrative remedies not required when "appealing through the administrative process would be futile because the agency . . . has predetermined the issue"). Nonetheless, the law would never change if litigants did not request the responsible tribunals to reconsider earlier rulings. Furthermore, Roque-Espinoza has bigger problems than administrative exhaustion. Whether or not we agreed with him on that point (and the Supreme Court's

cases construing the contemporaneous exhaustion requirements of the Prison Litigation Reform Act suggest strongly that futility excuses will not go far, see *Porter v. Nussle,* 534 U.S. 516 (2002); *Booth v. Churner,* 532 U.S. 731 (2001)), the fact remains that Roque-Espinoza was not completely deprived of an opportunity to seek judicial review of the IJ's understanding of the law. That is enough to dispose of his case.

Even though Roque-Espinoza may have had good reason for thinking that he was not eligible for discretionary relief from removal, because the IJ had so informed him, he should have realized that avenues of judicial review were available to him. Apart from a direct appeal to the court of appeals from a BIA order finding him ineligible for § 212(c) relief, which may have been possible, he could also have filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See *Calcano-Martinez v. INS*, 533 U.S. 348, 351 (2001); *Bosede v. Ashcroft*, 309 F.3d 441, 446 (7th Cir. 2002). In *United States v. Gonzalez-Roque*, 301 F.3d 39 (2d Cir. 2002), the Second Circuit held that an alien was not deprived of his right to seek judicial review of a removal order via the writ of habeas corpus despite the fact that at the time of Gonzalez-Roque's removal proceedings and related appeals, the Supreme Court had not yet firmly established that habeas corpus relief survived Congress's termination of judicial review for removable aliens convicted of aggravated felonies in the IIRIRA and AEDPA. *Id*. at 49-50. After all, this is the mechanism that Enrico St. Cyr used, and his efforts yielded a Supreme Court decision to the effect that the repeal of § 212(c) relief could not be applied retroactively to aliens in his position. *St. Cyr*, 533 U.S. at 326. Nothing prevented Roque-Espinoza from playing the role of St. Cyr in his particular situation. The fact that he chose not to make the attempt does not mean that he was deprived of all avenues of judicial review of his removal order. Since the earlier order was a valid one, there is no reason

why the government could not rely on it to prove the later violation of § 1326.

Given this conclusion, we have no need to reach Roque-Espinoza's further argument that the proceedings leading up to his 1998 removal were fundamentally unfair: this is an issue he could have tested earlier, but did not. We note, however, that it would be hard to show that the loss of a chance at wholly discretionary relief from removal is the kind of deprivation of liberty or property that the due process clause is designed to protect. See *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002) ("Because eligibility for § 212(c) relief is not a liberty or property interest warranting due process protection, we hold that the Immigration Judge's error in failing to explain Lopez-Ortiz's eligibility does not rise to the level of fundamental unfairness."); *United States v. Wilson*, 316 F.3d 506, 510 (4th Cir. 2003) (same). The Tenth Circuit, in contrast, has held that in some cases, an IJ's failure properly to inform an alien facing removal of her right to seek discretionary relief is fundamentally unfair. *United States v. Aguirre-Tello*, 324 F.3d 1181, 1191 (10th Cir. 2003); see also *Wilson*, 316 F.3d at 515-16 (Motz, J., concurring) (disagreeing that discretionary nature of § 212(c) relief means that removal proceeding in which eligible alien is not informed of her right to pursue such relief is not fundamentally unfair).

There may be an important distinction between an alien's claim that she has a right to seek discretionary relief, and the very different claim that she has a right to have that discretion exercised in a particular way. Depending on the nature of the underlying interest implicated, denial of the first might violate basic principles of due process, even though it is clear that no claim can be stated with regard to the latter. For example, it is well established that there is no constitutional right to parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Yet when a state creates a parole system with mandatory pro-

visions, an expectation of parole that is entitled to some due process protections may be established. *Id*. at 12; *Walker v. Prisoner Review Bd.*, 769 F.2d 396, 400 (7th Cir. 1985). We need not decide here how far this line of analysis can be taken in the context of the relief afforded by § 212(c), because Roque-Espinoza's failure to exhaust the remedies available to him dooms his case no matter what.

## III

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*