# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-3338

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NOEL SANTIAGO-OCHOA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 1009-1—**Milton I. Shadur**, *Judge.*

ARGUED OCTOBER 18, 2005—DECIDED MAY 19, 2006

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Mexican national Noel Santiago-Ochoa was convicted of reentering the United States without permission after he was removed following conviction for an aggravated felony. *See* 8 U.S.C. § 1326(a). The district court sentenced him to 77 months' incarceration and 3 years' supervised release. Santiago-Ochoa now renews the due process challenge raised in his unsuccessful motion to dismiss the indictment, and also argues that *United States v. Booker*, 543 U.S. 220 (2005), compels resentencing. We affirm the conviction and direct a limited remand of the sentence under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

## I.  History

Santiago-Ochoa first entered the United States without authorization in 1988. During his stay, he was twice convicted of domestic battery in Illinois, first in 1996 and again in 1997. The second offense was a Class 4 felony because it followed a prior conviction for domestic battery. *See* 720 ILCS 5/12-3.2(b). Santiago-Ochoa also was convicted in Illinois in 1998 of delivery of a controlled substance. While he was serving the 180-day jail term imposed as a condition of his sentence of probation on that conviction, immigration authorities learned of his presence in the United States.

The Immigration and Naturalization Service (INS) (now the U.S. Citizenship and Immigration Services (USCIS), a bureau of the Department of Homeland Security) concluded that Santiago-Ochoa was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) (making deportable any alien convicted of an aggravated felony) based on his drug conviction, *see* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" as "including a drug trafficking crime") and took him into custody on December 23, 1998. Santiago-Ochoa was notified that the INS intended to issue a final administrative order of removal under the expedited procedures set out in 8 U.S.C. § 1228(b), which, as the notice explained, do not involve a hearing before an immigration judge. *See* 8 C.F.R. § 238.1(b)(2). The notice advised Santiago-Ochoa that he had the right to retain counsel and contest his removal, and that he could seek judicial review of the final administrative order by filing a petition for review within 14 days after the order was issued. The notice also informed him that he could waive judicial review by executing a written waiver. A certificate of service at the bottom of the notice represents that it was personally served on Santiago-Ochoa and explained to him in both English and Spanish.

The government asserts—and Santiago-Ochoa has never disputed—that he signed a form acknowledging receipt of the notice. That form includes an acknowledgment that he waived his rights to contest the removal and to "petition for review of the Final Removal Order." Santiago-Ochoa was removed to Mexico on December 30, 1998.

He did not remain in Mexico long. Police records show that just two weeks later officers in Streator, Illinois, responded to an anonymous complaint that Santiago-Ochoa had beaten his girlfriend and confined her in her home for several days. In July 2000 he was arrested near Chicago for driving under the influence. A driver's license check disclosed that he was present in the country illegally, and the officers contacted the INS. In October 2000 the INS gave Santiago-Ochoa notice that it intended to reinstate his 1998 removal order under 8 U.S.C. § 1231(a)(5). The government asserts—and again Santiago-Ochoa has never disputed—that he signed an acknowledgment stating that he did not wish to contest the reinstatement. He was swiftly removed.

Once more Santiago-Ochoa returned to the United States. In 2001 he was again arrested in Illinois for delivery of a controlled substance. He was convicted in 2002 and sentenced to prison, and was still serving that state sentence when federal authorities charged him in this case in 2003.

Santiago-Ochoa responded to the federal indictment by moving to dismiss under 8 U.S.C. § 1326(d). Under that provision, a defendant charged with violating § 1326(a) may collaterally attack the removal underlying his criminal prosecution by showing that: (1) he exhausted available administrative remedies, (2) the removal proceedings improperly deprived him of the opportunity for judicial review, and (3) the entry of the removal order was fundamentally unfair. *See* 8 U.S.C. § 1326(d)(1)-(3). Santiago-Ochoa's memorandum of law supporting his motion to dismiss was almost unintelligible, but his essential claim was that the 1998 removal proceedings were conducted in

a manner so "grossly inept and incompetent" as to render his waiver of his right to contest the final order of removal unknowing. The government countered that he failed to satisfy all three § 1326(d) requirements.

The district court denied Santiago-Ochoa's motion to dismiss in a one-sentence minute order stating that the ruling was explained "orally in open court." The court's reasoning is unavailable, however, because Santiago-Ochoa never ordered a transcript of the hearing. After the denial of his motion, he pleaded guilty to the indictment, reserving in writing the right to appeal the denial of his motion to dismiss. He was sentenced on August 26, 2004, at the bottom of the Guidelines range. Santiago-Ochoa also failed to obtain a sentencing transcript, so there is no way to tell from this record whether the court explained its reasons for choosing this sentence or elaborated on its understanding of our decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *aff'd*, 543 U.S. 220 (2005), which was decided seven weeks before Santiago-Ochoa was sentenced.

## II. Analysis

On appeal Santiago-Ochoa argues that the district court erred in denying his motion to dismiss the indictment. In the alternative he argues that he should be resentenced because the district court adjusted his offense level based on a finding that he believes required a jury determination.

However, both his appellate arguments lack evidentiary support because he has not provided us transcripts of the relevant hearings. We could decline to review either issue on this ground alone. *See* Fed. R. App. P. 3(a)(2), 10(b)(1)(A); *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1215 (10th Cir. 1999); *United States v. Ferguson*, 35 F.3d 327, 334 (7th Cir. 1994). However, as long as meaningful review is possible, we may exercise our discretion and look to the merits. *See Birchler v. Gehl Co.*, 88 F.3d 518,

519-20 (7th Cir. 1996); *Rodriguez v. Anderson*, 973 F.2d 550, 552 (7th Cir. 1992).

Moreover, because our review of the denial of a motion to dismiss under § 1326 is de novo, *see United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005); *United States v. Gonzalez*, 429 F.3d 1252, 1255 (9th Cir. 2005); *United States v. Gonzalez-Coronado*, 419 F.3d 1090, 1092 (10th Cir. 2005), it is not necessary for us to know precisely how the district court reached its decision on that issue. And the government does not urge dismissal; in fact, it suggests that a limited remand of the sentence is warranted.

We begin our merits analysis with the denial of Santiago-Ochoa's motion to dismiss. Here, we agree with the district court's implicit conclusion that Santiago-Ochoa did not satisfy the § 1326(d) requirements. First, by waiving his right to contest his removal, he failed to exhaust his administrative remedies. *See United States v. Martinez-Rocha*, 337 F.3d 566, 569 (6th Cir. 2003). Because he was removed under expedited procedures, he did not appear before an immigration judge, and thus did not have recourse to an administrative appeal before the Board of Immigration Appeals. But as he was informed by a notice whose receipt he acknowledged, there are special procedures for challenging expedited removal charges. *See* 8 U.S.C. § 1228(b)(4)(C) (requiring that alien have "reasonable opportunity to inspect the evidence and rebut the charges"); 8 C.F.R. § 238.1(c)(1) (providing that alien may respond to Notice of Intent within 10 calendar days of service, or 13 calendar days, if service is by mail. The alien may submit evidence of his own, request to review the government's evidence, or, if necessary, request an extension of the time for response.). The fact that Santiago-Ochoa chose not to avail himself of this remedy does not relieve him of his § 1326(d)(1) duty to exhaust.

Santiago-Ochoa failed to satisfy the second prong of § 1326(d) because he made no showing that he was unable

to petition for review of the administrative decision under 28 U.S.C. § 2241. To the extent he contends that he was deprived of the opportunity for judicial review by 8 U.S.C. § 1252(a)(2)(C)—which generally precludes review of orders of removal where the alien has committed an aggravated felony—his argument is foreclosed by *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003). That decision holds that an alien is not deprived of judicial review for purposes of § 1326(d)(2) as long as he has recourse to relief through a petition for habeas corpus.[1] *Id.* Santiago-Ochoa attempts to distinguish his case from *Roque-Espinoza* on the ground that the defendant in that case did not attempt to challenge his removal proceedings until after he pleaded guilty, but we cannot see why this distinction matters.

Finally, Santiago-Ochoa is unable to satisfy § 1326(d)(3)'s requirement that he demonstrate that entry of the 1998 removal order was "fundamentally unfair." This means that in addition to showing a violation of due process, *see Roque-Espinoza*, 338 F.3d at 729, he must show that he was prejudiced by the removal proceedings, *see United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994). Santiago-Ochoa can demonstrate neither. He contends that his right to due process was violated because he was not informed of his eligibility for discretionary forms of relief such as cancellation of removal and adjustment of status. But his only authority for arguing that he had a right to be in-

---

[1] Were the removal occurring today, this aspect of the case would be different. Santiago-Ochoa, like Roque-Espinoza, was removed in 1998; at that time, for aggravated felons, even constitutional questions and questions of law were reviewable only under a petition for habeas corpus. But the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, has amended 8 U.S.C. § 1252 to provide for exclusive review of such questions in the courts of appeals. *See id.* § 106(a)(1)(A).

formed is *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), where the Supreme Court was asked to *assume* rather than *decide* that the "respondents' rights to due process were violated by the failure of the Immigration Judge to explain adequately their right to suspension of deportation or their right to appeal." *Id.* at 839-40.

Since *Mendoza-Lopez* was decided, however, a majority of circuits have rejected the proposition that there is a constitutional right to be informed of eligibility for—or to be considered for—discretionary relief. *See Bonhometre v. Gonzales*, 414 F.3d 442, 448 n.9 (3d Cir. 2005); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc); *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002); *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002); *Oguejiofor v. Attorney Gen. of the United States*, 277 F.3d 1305, 1309 (11th Cir. 2002); *Escudero-Corona v. INS*, 244 F.3d 608, 615 (8th Cir. 2001); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000); *see also Roque-Espinoza*, 338 F.3d at 729-30 (reasoning similarly in dicta that "it would be hard to show that the loss of a chance at wholly discretionary relief from removal is the kind of deprivation of liberty or property that the due process clause is designed to protect"). *But see United States v. Copeland*, 376 F.3d 61, 70-73 (2d Cir. 2004) (holding that failure to inform alien of eligibility for a waiver of deportation may be "fundamentally unfair within the meaning of Section 1326(d)" because of the serious consequences of removal and the "special responsibilities" of IJs as administrators in nonadversarial proceedings); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049-50 (9th Cir. 2003) (holding that IJ's failure to inform alien of eligibility for relief from removal violated due process because regulation imposing duty to do so was "mandatory"). We now join the majority of circuits.

Furthermore, even if there had been a violation of Santiago-Ochoa's due process rights, he would still be unable to show prejudice. First, he is an aggravated felon,

which means he is conclusively presumed to be subject to removal and is ineligible for cancellation of removal, voluntary departure, and registration as a permanent resident alien. *See Espinoza-Farlo,* 34 F.3d at 471-72. When we add to the obstacles imposed by virtue of that status the effect of § 1228(b)(5)'s exclusion of aliens removed under the expedited procedures from "any relief from removal that the Attorney General may grant in the Attorney General's discretion," the absence of prejudice is deducible almost as a matter of law. *See United States v. Garcia-Martinez*, 228 F.3d 956, 963 (9th Cir. 2000) (holding that for alien convicted of aggravated felony and placed in expedited procedures under § 1228, removal is "foregone conclusion"); *United States v. Benitez-Villafuerte*, 186 F.3d 651, 659 (5th Cir. 1999) (same).

As for his *Booker* claim, Santiago-Ochoa's primary contention is frivolous. He argues that *Booker* implicitly overruled the holding of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and that therefore the district court's failure to submit the question whether he committed a "crime of violence" to a jury violated his rights under the Sixth Amendment. But we have repeatedly rejected invitations to anticipate the Supreme Court in overruling this precedent. *See, e.g.*, *United States v. Browning,* 436 F.3d 780, 781-82 (7th Cir. 2006); *United States v. Pittman*, 418 F.3d 704, 709 (7th Cir. 2005). And a Sixth Amendment claim would not lie even if *Almendarez-Torres were* overruled, because whether his offense was a crime of violence is a question of law. *See United States v. Lewis*, 405 F.3d 511, 513-14 (7th Cir. 2005); *United States v. Bryant*, 310 F.3d 550, 552 (7th Cir. 2002). Further, in his plea agreement Santiago-Ochoa twice stipulated that his crime was a crime of violence, and facts admitted by the defendant need not be submitted to a jury. *See Browning*, 436 F.3d at 782; *Pittman*, 418 F.3d at 709.

We will, however, adopt the government's suggestion and order a limited remand under *Paladino*. Such remands

normally require us to examine the sentencing transcript in order to determine whether the district court would have imposed a lighter sentence if it had known that the Guidelines were advisory, *see Paladino*, 401 F.3d at 482-83; *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005); but the government's concession here that the district court treated the Guidelines as mandatory and that it is "impossible to say" whether it would have imposed a lesser sentence, *see United States v. Johnson*, 437 F.3d 665, 679 (7th Cir. 2006); *Paladino*, 401 F.3d at 483-84, make that step unnecessary.

## III. Conclusion

We affirm the conviction and direct a limited remand of the sentence under *Paladino*.

No. 04-3338

A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*