In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-2060

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE DE HORTA GARCIA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 CR 185—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED JANUARY 29, 2008—DECIDED MARCH 13, 2008

_____

Before BAUER, KANNE and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Jose De Horta Garcia, then a permanent resident alien, was deported in 1996 because he had been convicted of a drug trafficking crime. This case involves his second illegal re-entry into the country after deportation. During his first prosecution for illegal re-entry, he challenged the validity of his deportation order on the grounds that he was denied his right to seek a discretionary waiver of deportation under former INA § 212(c), 8 U.S.C. § 1182(c) (1995) (repealed), arguing that the repeal of discretionary waiver should not have been applied to prevent him from

applying for the waiver. The District of Alaska rejected his contention and De Horta Garcia did not appeal. He raised the argument again in this prosecution and the district court rejected it based on circuit precedent. We affirm.

**Background**

De Horta Garcia first came to the United States from Mexico in 1976. He married a United States citizen in 1983 and became a lawful permanent resident. By November 1995, De Horta Garcia had separated from his wife and moved to Alaska where he was arrested in a drug sting. In February 1996, De Horta Garcia waived his speedy trial rights, ALASKA R. CRIM. P. 45, extending the state's time to prosecute him into June 1996. In June 1996 he pleaded guilty to attempted misconduct involving a controlled substance. He appeared, without counsel, at a group deportation hearing in December 1996 and was ordered deported under INA § 212(a)(2)(C); 8 U.S.C. § 1182(a)(2)(C), which at that time made excludable any alien who had been an illicit trafficker of any controlled substance. He was released at the Mexican border the next day.

The timing of De Horta Garcia's guilty plea and deportation were very unfortunate for him. Had he pleaded guilty and appeared at a deportation hearing only a few months earlier, before April 23, 1996, he would have had the right to petition the Attorney General for relief from deportation. *See* INA § 212(c); 8 U.S.C. § 1182(c) (1995) (repealed); *see also INS v. St. Cyr*, 533 U.S. 289, 295-96 (2001). When Congress passed the Antiterrorism and Effective Death Penalty Act, effective April 23, 1996, however, it amended § 212(c) so that it no longer applied

to aliens, including De Horta Garcia, made excludable for most controlled substance offenses. *See* INA § 212(c); 8 U.S.C. §§ 1182(c), 1251(a)(2)(B) (1996). The IJ at De Horta Garcia's deportation hearing apparently concluded that AEDPA's modification of § 212(c) applied to aliens who offended and were arrested before the modification but convicted after it, and so did not tell De Horta Garcia that he had a right to petition the Attorney General for relief from deportation.

About a year after he was deported, De Horta Garcia was discovered in Alaska and charged with illegal re-entry after deportation. *See* 8 U.S.C. § 1326(a), (b)(2). The District Court for the District of Alaska initially dismissed the indictment, finding that the original deportation rested on an impermissible retroactive application of § 212(c) in violation of the Due Process Clause. On the government's motion for reconsideration, though, the district court reversed itself based on binding Ninth Circuit precedent. De Horta Garcia was ultimately convicted of illegal re-entry, and he did not appeal. At the end of his prison term in June 2002, he was deported to Mexico again.

After the district court's initial dismissal of the indictment, De Horta Garcia moved to reopen his original deportation proceedings and stay his deportation order. The IJ denied De Horta Garcia's motion before the district court reconsidered its dismissal. The IJ's ruling was based on BIA precedent, as well as De Horta Garcia's failure to move to reopen within the 90 days allowed by 8 C.F.R. § 3.23. Nothing in the record suggests that De Horta Garcia appealed the IJ's ruling.

After being deported a second time, De Horta Garcia found his way back into the United States once again. This

time he was arrested in Wisconsin in September 2006 on retail theft charges. After being referred to federal authorities, he was again indicted for illegal re-entry after deportation, 8 U.S.C. § 1326(a), (b)(2), and again argued that his original deportation was invalid because he was denied the right to petition the Attorney General for discretionary relief from deportation under § 212(c). The district court rejected this argument based on *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998), which concluded that AEDPA's bar against discretionary waivers applied retroactively to aliens, like De Horta Garcia, who offended before its passage, but were convicted after its passage. De Horta Garcia pleaded guilty, but reserved his right to appeal the retroactivity issue.

**Analysis**

De Horta Garcia begins by conceding, as he must, that the district court properly relied upon *LaGuerre* and goes on to predict that "in all likelihood," we will not revisit our prior precedent. But counsel for De Horta Garcia makes a hard argument harder by not fully presenting his arguments for reconsidering *LaGuerre* in his brief. Instead counsel includes in his short appendix the brief he filed in the district court and states in his appellate brief that it is "incorporated herein." We normally refuse to consider such incorporations because "[e]ven when a litigant has unused space . . ., incorporation is a pointless imposition on the court's time." *DeSilva v. DeLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999).

In the context of a litigant's failure to provide a transcript under Federal Rule of Appellate Procedure 10(b), we have held that where "meaningful review is possible,"

we may exercise our discretion and rule on the merits. *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1018-19 (7th Cir. 2006). Because meaningful review is possible—but just barely—in this case and because we hesitate to thwart De Horta Garcia's stated objective to challenge our precedent in the Supreme Court, we address the arguments on the merits.

Before analyzing De Horta Garcia's primary argument, though, we must analyze a procedural bar that he cannot overcome under circuit precedent. Section 1326(d) allows a collateral attack of a deportation order only upon a showing that

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Although De Horta Garcia can arguably meet the first two conditions, we have previously held that an alien in his position cannot meet the third.

To show fundamental unfairness, De Horta Garcia must show, first, a violation of due process, and second, that he was prejudiced by the removal proceedings. *See Santiago-Ochoa*, 447 F.3d at 1019. If De Horta Garcia truly lost his opportunity to apply for § 212(c) relief that might have been granted, then he might have been able to show that he was prejudiced, i.e., that judicial review "would have yielded him relief from deportation." *See United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir.

1994). But, we have joined the majority of circuits in holding that due process does not encompass a "right to be informed of eligibility for—or to be considered for— discretionary relief." *Santiago-Ochoa*, 447 F.3d at 1020; *but see United States v. Copeland*, 376 F.3d 61, 71 (2d Cir. 2004) (failure to inform alien of right to discretionary relief can be fundamentally unfair); *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1049-50 (9th Cir. 2004) (same). Thus, under this circuit's precedent, the violation De Horta Garcia contends occurred at his deportation hearing did not make the deportation order "fundamentally unfair," and he may not collaterally attack it in this prosecution. *See Santiago-Ochoa*, 447 F.3d at 1020.

Finally, even if De Horta Garcia could steer clear of the roadblocks preventing him from collaterally attacking his deportation order, his attack itself is also foreclosed by circuit precedent. In *LaGuerre*, we explained that the change to § 212(c) would apply retroactively unless it would disturb reasonable expectations. *LaGuerre*, 164 F.3d at 1041. But we concluded that applying the new law retroactively to aliens like De Horta Garcia would not disturb reasonable expectations because "[i]t would border on the absurd to argue that these aliens might have decided not to commit drug crimes . . . had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation." *Id.* We have held that retroactive application is impermissible because it would disturb reasonable expectations in only two situations: (1) when an alien had conceded deportability before repeal in reliance on the possibility of § 212(c) relief, *Reyes-Hernandez v. INS*, 89 F.3d 490, 492-93 (7th Cir. 1996), and (2) when an alien had pleaded guilty to the

underlying offense before repeal partly in reliance on the possibility of relief, *Jideonwo v. INS*, 224 F.3d 692, 700 (7th Cir. 2000). In both cases, we required a showing of specific facts demonstrating actual reliance. *Id.*; *Reyes-Hernandez*, 89 F.3d at 492. In *St. Cyr*, the Supreme Court held that the repeal of § 212(c) did not apply retroactively to *any* alien who pleaded guilty before its passage, 533 U.S. at 321, 323-24, but we have not read that case as altering the actual reliance requirement. The rule in this circuit remains that relief under § 212(c) is not available to any alien whose removal proceeding began after repeal except to those who affirmatively abandoned rights or admitted guilt in reliance on § 212(c) relief. *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004). Because De Horta Garcia cannot show such affirmative reliance, his primary argument is foreclosed by circuit precedent.

De Horta Garcia notes, however, that other circuits have taken alternative approaches to the reliance question. First, some circuits have applied *St. Cyr* to aliens who did not plead guilty or concede deportability before enactment, but did take some affirmative action in their prosecution that evidenced reliance on § 212(c) before enactment. *E.g.*, *Restrepo v. McElroy*, 369 F.3d 627, 634-35 (2d Cir. 2004); *Ponnapula v. Ashcroft*, 373 F.3d 480, 494-96 (3d. Cir. 2004). Second, two circuits, the Third and the Tenth have criticized the majority of circuits for requiring a showing of actual detrimental reliance and have only required objectively reasonable reliance. *Id.* at 489-90; *Hem v. Maurer*, 458 F.3d 1185, 1197 (10th Cir. 2006). The Fourth Circuit has gone further and not required a showing of reliance at all, reasoning, in part, that it is always reasonable to rely on governing law. *Olatunji v. Ashcroft*, 387 F.3d 383,

389-96 (4th Cir. 2004). De Horta Garcia attempts to rely on these alternative approaches, but his arguments are far too cursory to reach the compelling reason we require before revisiting circuit precedent. *See Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006).

## Conclusion

We therefore AFFIRM the judgement of the district court.

ROVNER, *Circuit Judge*, concurring. I join the court in affirming the judgment. In key respects, De Horta Garcia's arguments for reversal are foreclosed by this circuit's precedents. I write separately to note my reservations about those precedents in the hope that we will, at some point, re-examine them.

In order to collaterally attack his deportation order, De Horta Garcia must show, among other things, that the entry of that order was fundamentally unfair. 8 U.S.C. § 1326(d)(3). That showing in turn demands proof that he was deprived of due process and that he was prejudiced thereby. *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1019-20 (7th Cir. 2006). De Horta Garcia posits that he was deprived of due process when the Immigration Judge who presided over his deportation proceeding failed to apprise him of his right to petition the Attorney General for relief from deportation pursuant to section 212(c) of the INA, 8 U.S.C. § 1182(c) (1995) (later repealed

and replaced by a different form of discretionary relief known as cancellation of removal, *see* 8 U.S.C. 1229b(b)). But relief under section 212(c) was discretionary, and this court has held that due process does not entitle an alien "to be informed of eligibility for—or to be considered for—discretionary relief." *Santiago-Ochoa*, 447 F.3d at 1020.

*Santiago-Ochoa* reflects the majority view, but I think the minority view, well articulated by the Second Circuit's decision in *United States v. Copeland*, 376 F.3d 61, 70-73 (2d Cir. 2004), has the better of the debate among the circuits on this point.[1] As *Copeland* points out, the focus on the discretionary nature of section 212(c) relief fails to properly distinguish the right to seek relief—which under section 212(c) was absolute—from the right to the relief itself. *Id.* at 72.

> The decisions holding that a failure to inform an alien about Section 212(c) relief cannot be a fundamental error collapse this distinction and incorrectly assume that, because the grant of Section 212(c) relief itself is discretionary, the denial of a Section 212(c) hearing cannot be a fundamental procedural error.

*Id.* The Supreme Court itself has explicitly recognized the distinction that the majority view has overlooked. *INS*

---

[1] *See* Anthony Distinti, Note, *Gone But Not Forgotten: How Section 212(c) Relief Continues to Divide Courts Presiding Over Indictments for Illegal Reentry*, 74 FORDHAM L. REV. 2809, 2825-35 (2006) (documenting the disparate circuit approaches); Brent S. Wible, *The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on Deportation Orders in Prosecutions for Illegal Reentry After* St. Cyr, 19 GEO. IMMIGR. L. J. 455, 467-80 (2005) (same).

*v. St. Cyr*, 533 U.S. 289, 307, 121 S. Ct. 2271, 2283 (2001) ("Traditionally, courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand."). Indeed, notwithstanding the discretionary nature of section 212(c) relief, the Court in *St. Cyr* treated the loss of an alien's eligibility to seek such relief as a concrete detriment that counseled against applying the 1996 repeal of section 212(c) retroactively to aliens who pleaded guilty to deportable offenses at a time when they still would have been eligible for section 212(c) relief. *Id.* at 321-25, 121 S. Ct. at 2290-93. The Court observed that for purposes of the retroactivity analysis, "[t]here is a clear difference . . . between facing *possible* deportation and facing *certain* deportation." *Id.* at 325, 121 S. Ct. at 2293 (emphasis mine). Thus, although the right to relief itself may be discretionary, what matters is the fact that the right of eligible aliens to seek relief is absolute. *Copeland*, 376 F.3d at 72. For many aliens facing deportation, discretionary relief is the only avenue of relief available. *Id.* at 73. And it is worth noting that the prospect of relief under section 212(c) by no means was illusory: as the Supreme Court noted in *St. Cyr*, before section 212(c) was repealed, more than one-half of all requests for discretionary relief were granted. 533 U.S. at 296 & n.5, 325 & n.54, 121 S. Ct. at 2277 & n.5, 2293 n.54; *see also* Vashti D. Van Wyke, Comment, *Retroactivity and Immigration Crimes Since* St. Cyr: *Emerging Signs of Judicial Restraint*, 154 U. Pa. L. Rev. 741, 747 & nn.32-34 (2006). Thus, when an Immigration Judge, who bears a special obligation to advise an alien of his legal rights, has failed to inform an unrepresented alien of his right to seek relief under section 212(c), the judge has committed a fundamental procedural error in violation of the alien's right to due process. *Copeland*,

376 F.3d at 71-73; *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049-1050 (9th Cir. 2004); *see also* Brent S. Wible, *The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on Deportation Orders In Prosecutions for Illegal Reentry After* St. Cyr, 19 GEO. IMMIGR. L. J. 455, 485-92 (2005) (advocating for adoption of Second Circuit's approach).

This is not to say that the discretionary nature of section 212(c) relief is wholly irrelevant. In order to demonstrate a fundamental unfairness that entitles him to collaterally challenge his deportation, De Horta Garcia would have to show not only that he was deprived of due process but also that he was prejudiced by the deprivation. *Santiago-Ochoa*, 447 F.3d at 1019. It is with respect to the prejudice prong of the analysis that the discretionary character of section 212(c) relief comes into play. To establish that he was harmed by the Immigration Judge's omission, De Horta Garcia would have to establish some likelihood that he would have been granted relief under section 212(c) had he been apprised of the possibility of such relief and availed himself of the right to seek it. *Copeland*, 376 F.3d at 73; *see* Wible, 19 GEO. IMMIGR. L. J. at 490 (describing different approaches among circuits to prejudice). De Horta Garcia might or might not be able to make that showing; no record has been made as to the relative merits of the case he could have made for discretionary relief. Under the current law of this circuit, however, De Horta Garcia and others like him are never given the opportunity to show that they might have obtained relief under section 212(c); we instead rely on the fact that section 212(c) relief was discretionary to hold that there was no due process right to be apprised of such relief or to be considered for it. For the reasons set forth in *Copeland*, I believe that premise is erroneous.

As the court points out, even if the path were clear for De Horta Garcia to mount a collateral attack on the deportation order, he would face a second obstacle in this court's precedents on retroactivity and reliance. When De Horta Garcia committed his drug offense in 1995, he had a right to seek relief from deportation pursuant to section 212(c). But by the time he was deported in December 1996, Congress, in section 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), had eliminated the right to seek discretionary relief for persons who, like De Horta Garcia, had committed drug-related offenses. *See LaGuerre v. Reno*, 164 F.3d 1035, 1037 (7th Cir. 1998). De Horta Garcia's collateral challenge to the deportation order presumes that the change in eligibility criteria for section 212(c) relief could not be applied to him, because although he was ordered deported after the law changed, he committed and was charged with the drug offense prior to the change. However, *LaGuerre*, 164 F.3d at 1041, concludes that the new bar to discretionary relief for those convicted of drug-related offenses applies in all pending deportation proceedings, even if the alien committed the drug offense prior to the change in the law, so long as the change in eligibility criteria did not disturb an alien's reasonable expectations. *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004) (per curiam), in turn suggests that an alien's reasonable expectations have been disturbed only when he actually relied to his detriment on the availability of section 212(c) relief. This would be true where the alien conceded deportability, admitted criminal culpability, or otherwise abandoned his rights in the expectation that he still would be eligible for section 212(c) relief. *Id.* But *LaGuerre* rejected the notion that simply because an alien committed the crime triggering his deportation before

the legislative change, he might have had any reasonable expectation that he would continue to be eligible for discretionary relief. 164 F.3d at 1041. It struck us as "border[ing] on the absurd" that an alien might have factored the availability of such relief into his decision to commit the underlying offense. *Id.*; *see also Kelava v. Gonzales*, 434 F.3d 1120, 1124-25 (9th Cir.), *cert. denied*, 127 S. Ct. 43 (2006) (coll. cases in the same vein); Van Wyke, 154 U. PA. L. REV. at 776-77 & n.173 (same).

However, the Fourth Circuit's opinion in *Olatunji v. Ashcroft*, 387 F.3d 383, 389-95 (4th Cir. 2004) (2-1 decision), makes a compelling case for the proposition that reliance is not properly an element of the retroactivity inquiry. The critical consideration, as *Olatunji* details at some length, is whether a new statute changes the legal consequences of acts that took place before its effective date. *Id.* at 390 (quoting *Society for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767, No. 13,1356 (C.C.D.N.H. 1814) (Story, J.)). As the Fourth Circuit acknowledges, there are indeed references to reliance in the Supreme Court's retroactivity precedents. *Id.* at 390-91, 393-94 (discussing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483 (1994), *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 117 S. Ct. 1871 (1997), *St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271, and *Republic of Austria v. Altmann*, 541 U.S. 677, 124 S. Ct. 2240 (2004)). That is not surprising, for reliance always looms in the background as a reason explaining the Court's longstanding presumption that when Congress enacts a new law, it does not intend for the law to apply retroactively unless it makes that intent clear. *Id.* at 393-94. The Court has assumed that society orders its affairs based on existing law, and that to apply new legal rules to acts that pre-date the change in law will, to some

extent, upset those expectations. But no Supreme Court decision requires or turns on proof that the party contesting retroactive application of new legislation actually relied to his detriment on prior law in setting his own course of conduct. "Subjective reliance . . . is neither dictated by Supreme Court precedent nor related to the presumption of congressional intent underlying the bar against retroactivity." *Id.* at 389; *see Atkinson v. Attorney Gen. of the U.S.*, 479 F.3d 222, 227-31 (3d Cir. 2007); Van Wyke, 154 U. PA. L. REV. at 787 ("[U]nfairness and the potential for reliance on the current state of the law are the reasons for the strong presumption against retroactivity, rather than the test for a retroactive effect; and the presumption against retroactivity is not a right to be earned by individuals, but a protection granted to all members of the class [of persons potentially affected by retroactive application of the new law]").

If, as the Fourth Circuit has concluded, the retroactivity analysis does not turn on reliance, then De Horta Garcia has a straightforward claim that he should not be deemed ineligible for section 212(c) relief because to do so would be to retroactively attach a new disability to his prior criminal conduct. Before the law changed in 1996, De Horta Garcia's commission of a drug offense (in 1995) would have rendered him deportable but at that point he nonetheless remained eligible for discretionary relief. And as *St. Cyr* recognized, he had at least a fifty-fifty shot at obtaining such relief. 533 U.S. at 296 & n.5, 325 & n.54, 121 S. Ct. at 2277 & n.5, 2293 n.54. After the law changed to bar those convicted of drug offenses from obtaining relief under section 212(c), he had no chance whatsoever. As *St. Cyr* also acknowledged, this is a significant difference. *Id.* at 325, 121 S. Ct. at 2293. Like the panel in *LaGuerre*, I too find it unlikely that when De Horta Garcia decided

to commit a drug offense, he entertained any thought about his prospective eligibility for relief from deportation in the event he was caught, convicted, and ordered deported. He obviously knew that he was committing a criminal offense, and if he did not actually know that such an offense would trigger his deportation, he certainly may be charged with constructive knowledge of that eventuality. Still, to retroactively hold him ineligible for section 212(c) relief based on his prior crime would undoubtedly increase the burden he must shoulder for that crime by eliminating even the possibility of relief from deportation. The Supreme Court's decision in *Landgraf* recognizes that legislation which imposes new disability or increases the extent of one's liability for past events should not be applied retroactively absent clear evidence of an congressional intent to do so. 511 U.S. at 282-85 & n.35, 114 S. Ct. at 1506-07 & n.35. The Court in *Hughes Aircraft* articulated the same rule for legislation that eliminates a defense to liability. 520 U.S. at 947-49, 117 S. Ct. at 1876-77. Barring De Horta from discretionary relief from deportation is the equivalent of these scenarios. *See Atkinson*, 479 F.3d at 230; *Ubaldo-Figueroa*, 364 F.3d at 1054-56 (Pregerson, J., concurring). And because Congress, when it enacted section 440(d) of the AEDPA, expressed no intent to apply the new bar to section 212(c) relief retroactively to those who committed drug offenses prior to its enactment, *see LaGuerre*, 164 F.3d at 1040-41, De Horta Garcia should remain eligible for relief from deportation.

To the extent that reliance ought to play any role in the retroactivity analysis, it is objective rather than subjective reliance that should be considered, as the Third, Sixth, and Tenth Circuits have concluded. *See Ponnapula v. Ashcroft*, 373 F.3d 480, 494-96 (3d Cir. 2004); *Thaqi v. Jenifer*, 377

F.3d 500, 504 n.2 (6th Cir. 2004); *Hem v. Maurer*, 458 F.3d 1185, 1197-99 (10th Cir. 2006); *see also Olatunji*, 387 F.3d at 396-97. And if it is objectively reasonable reliance that must be established, I believe that De Horta Garcia can make that showing. In February 1996, De Horta Garcia waived his speedy trial rights, which extended until June 1996 the State of Alaska's time to prosecute him on the drug charge. At the time De Horta Garcia made the decision to waive his rights, the AEDPA and its ban on section 212(c) relief for those convicted of drug-related offenses was not yet law. It was not until April 24, 1996, roughly two months after the waiver, that the AEDPA had emerged from Congress and was signed into law by President Clinton. A person in De Horta Garcia's position reasonably might have believed, at the time he waived his speedy trial rights, that when he eventually pleaded guilty he would still be able to seek section 212(c) relief. And there is a very real chance, that had De Horta Garcia not waived his speedy trial rights and his prosecution not been delayed, he would have pleaded guilty *before* the AEDPA became law, thus putting him in the very category of aliens that *St. Cyr* held could not be deprived retroactively of their right to seek relief under section 212(c). This set of facts is sufficient to demonstrate objectively reasonable reliance on the availability of section 212(c) relief. *Cf. Restrepo v. McElroy*, 369 F.3d 627, 634 (2d Cir. 2004) (where individual decides to postpone filing his application for section 212(c) relief in order to build a more convincing case for rehabilitation, believing that such relief would still be available at a later date, "the AEDPA's undermining of this settled expectation represents a prototypical case of retroactivity"). Even if De Horta Garcia had opted for a timely trial instead, it is not unreasonable to think that the continued

availability of section 212(c) relief would have factored into his decision. *See Ponnapula*, 373 F.3d at 496 ("The reasonable reliance question turns on the nature of the statutory right and the availability of some choice affecting that right, not on the choice actually made.").

Under the law as it stands in this circuit, relief is unavailable to De Horta Garcia. Persuasive authority from our sister circuits suggests, however, that in certain respects the precedents that stand in De Horta Garcia's path may be incorrect and should be re-visited.

I respectfully concur in the judgment.