In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2368

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIO ARITA-CAMPOS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:05-CR-48—**Philip P. Simon**, *Chief Judge.*

ARGUED APRIL 6, 2010—DECIDED JUNE 8, 2010

Before KANNE, ROVNER, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* In September 1993, fourteen-year-old Mario Arita-Campos was apprehended by immigration officials. Because he had entered the United States illegally without inspection, immigration officials determined that he was deportable.[1] When Arita-Campos

---

[1] In 1997, after Arita-Campos had been ordered deported, Congress changed the nomenclature of immigration law, electing to use the term "removal" instead of the previously

(continued...)

subsequently failed to appear at his scheduled deportation hearing in February 1994, he was ordered deported *in absentia*. That order was never executed, however, because Arita-Campos never appeared for deportation. After being apprehended again nearly ten years later in Illinois, in 2004 the government finally deported Arita-Campos per the original order of deportation.

Not to be deterred, Arita-Campos re-entered the country sometime during the following year, 2005. This time he was caught and charged with illegal re-entry after being deported in violation of 8 U.S.C. § 1326(a). But because the 1994 order of deportation, which is the under-lying basis for the current offense, was entered *in absentia*, Arita-Campos moved to dismiss the 2005 indictment, alleging that he never received notice of the 1994 deporta-tion hearing. After the district court denied Arita-Campos's motion to dismiss the indictment, he pled guilty to the charged conduct but reserved his right to appeal the denial of his motion to dismiss. We now affirm.

## I. BACKGROUND

Mario Arita-Campos was fourteen years old when he first entered the country in 1993. After immigration

---

[1] (...continued)
used "deportation." *Calcano-Martinez v. INS,* 533 U.S. 348, 350 n.1 (2001); *Peralta-Cabrera v. Gonzales,* 501 F.3d 837, 839 n.1 (7th Cir. 2007). Because the challenged order underlying this case was for "deportation," we will continue to use that termi-nology throughout this opinion.

officials discovered that Arita-Campos was not properly inspected upon entry, they deemed him deportable. In October of the same year, Arita-Campos was personally served with an Order to Show Cause and Notice of Hearing ("OSC"), informing him of the allegations supporting the charge of deportation and ordering him to appear before an immigration judge at a later, unspecified date. Arita-Campos provided a physical mailing address as required by the OSC and he was then released into his brother's custody pending his deportation hearing.

In February 1994, a deportation hearing was held in Arita-Campos's case. The proceeding actually involved ten aliens, none of whom were present. The immigration judge called all ten individuals' names, and when none appeared, he indicated that he would proceed *in absentia*.

The immigration judge proceeded to admit exhibits consisting of the Orders to Show Cause and Certified Written Notices pertaining to and provided to each individual absent from the day's proceedings. After marking the exhibits, the judge made the following findings: the evidence proffered by the government was uncontroverted; the aliens failed to appear for their scheduled hearings, even though all had received proper notice by certified mail; and the aliens therefore abandoned any relief in defense of deportability. Based on the foregoing, the judge ordered all of the aliens deported to their respective countries. A warrant was then issued ordering Arita-Campos to appear for deportation in September 1994. Arita-Campos never appeared.

Nearly ten years later, in May 2004, Arita-Campos was arrested in Illinois on the 1994 order of deportation. After a Warrant for Deportation was issued in June 2004 , Arita-Campos was at last deported. But at some point during the following year, Arita-Campos re-entered the United States illegally.

In March 2005, Arita-Campos was once again apprehended, this time by local authorities in Indiana who believed that Arita-Campos had violated state law. Although he was never charged with a state-law crime, his arrest alerted federal officials to his presence in the country. This time, federal immigration officials indicted and charged Arita-Campos with re-entry after deportation in violation of 8 U.S.C. § 1326(a). But Arita-Campos again evaded arrest. He was finally discovered in Connecticut more than three years later, where in 2008 he was arrested on the grounds charged in the federal indictment.

Arita-Campos was detained and a hearing was set in his case. Prior to his hearing, the government filed a motion in limine regarding anticipated litigation of the 1994 order of deportation, which served as the basis for the charged conduct. That same day, Arita-Campos filed a motion to dismiss the indictment, challenging the validity of the previous deportation order upon which the government was relying to prove its case. Because he claimed never to have received notice of the hearing, Arita-Campos argued that the original order was constitutionally infirm and could not serve as the basis for the underlying offense.

After a hearing and numerous briefings, the district court found that because Arita-Campos failed to exhaust his administrative remedies or show that the hearing was fundamentally unfair, he was unable to challenge the validity of the original deportation order. The district court therefore denied Arita-Campos's motion to dismiss and granted the government's motion in limine.

In March 2009, the parties filed a plea agreement in which Arita-Campos pled guilty to violating 8 U.S.C. § 1326(a). He was sentenced to six months in custody, and the court declared his sentence "time served." But Arita-Campos reserved his right to appeal the district court's denial of his motion to dismiss. That issue is now before us.

## II. ANALYSIS

Title 8, section 1326 of the United States Code makes it an offense to re-enter the United States illegally after having been deported. Because an original order of deportation is a condition precedent to the operation of § 1326, the Supreme Court has held that a defendant may collaterally attack the deportation order underlying the offense. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). The flip side of this principle, of course, is that the government may only "rely on a prior deportation as an element of the crime of unlawful re-entry, [if] the proceedings leading up to the deportation . . . comport[ed] with principles of due process." *United States v. Roque-Espinoza*, 338 F.3d 724, 727 (7th Cir. 2003).

But it is the defendant's burden if he wishes to collaterally attack an underlying deportation order. *See, e.g.*, *United States v. Arevalo-Tavares*, 210 F.3d 1198, 1200 (10th Cir. 2000) ("[T]he burden of proof in a collateral attack on a deportation order is on a defendant based on the presumption of regularity that attaches to a final deportation order."). Our case law therefore traditionally required a defendant to make two showings in order to mount a successful collateral attack: "the defendant must first show that the underlying order was the result of a 'deportation hearing [that] effectively foreclosed his right to direct judicial review of the deportation order,' and then establish that 'the deportation hearing was fundamentally unfair.'" *Roque-Espinoza*, 338 F.3d at 727 (*quoting United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994)) (alteration in original).

Then in 1996, Congress amended § 1326, adding a third prong to the proof required:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> >
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamen-
tally unfair.

8 U.S.C. § 1326(d).

Several circuits have held that because the three require-
ments are stated in the conjunctive, a defendant must
satisfy all three prongs to prevail in his collateral attack.
*See United States v. Torres*, 383 F.3d 92, 98-99 (3d Cir.
2004); *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir.
2003), *abrogated on other grounds by Lopez v. Gonzales*, 549
U.S. 47 (2006); *United States v. Zelaya*, 293 F.3d 1294, 1297
(11th Cir. 2002); *United States v. Fernandez-Antonia*, 278
F.3d 150, 157 (2d Cir. 2002). The Ninth Circuit, however,
qualified that position in *United States v. Muro-Inclan*,
when it held that "[t]he exhaustion requirement of
8 U.S.C. § 1326(d) cannot bar collateral review of a de-
portation proceeding when the waiver of right to an
administrative appeal did not comport with due process."
249 F.3d 1180, 1183 (9th Cir. 2001).

For our part, we have yet to remark on the distinction,
if any, between the circuits' approaches. Nor have we
held expressly that all three requirements must be met,
although we have certainly implied that this is the case
on a few recent occasions. *See, e.g.*, *United States v. De Horta
Garcia*, 519 F.3d 658, 661 (7th Cir. 2008), *cert. denied*, 129
S. Ct. 489 (2008); *United States v. Santiago-Ochoa*, 447
F.3d 1015, 1019-20 (7th Cir. 2006); *Roque-Espinoza*, 338
F.3d at 728.

We need not resolve either of those questions now,
however, because Arita-Campos fails to satisfy *any* of the

three requirements contained in § 1326. To illustrate the shortcomings in Arita-Campos's position, we now turn to the merits, reviewing the denial of his motion to dismiss *de novo*. *Santiago-Ochoa*, 447 F.3d at 1019.

### A. Exhaustion

To satisfy the exhaustion prong of § 1326, an alien must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him. *See Roque-Espinoza*, 338 F.3d at 728-29. For purposes of § 1326, a failure to follow these procedures, including a failure to file a motion to reopen, will result in the inability to challenge the deportation order. *United States v. Hinojosa-Perez*, 206 F.3d 832, 836 (9th Cir. 2000).

Ordinarily an alien has ninety days from the entry of the final decision within which to file a motion to reopen. 8 U.S.C. § 1229a(c)(7)(C), 8 C.F.R. § 1003.23(b)(1). But this time constraint is inapplicable when the underlying order was made *in absentia* and the alien either received no notice of the proceeding or exceptional circumstances kept him from appearing. *Id.* § 1229a(b)(5)(C), 8 C.F.R. § 1003.23(b)(4)(ii). In fact, if an alien can demonstrate that he was never notified of the proceeding, a motion to reopen may be filed "at any time." *Id.* § 1229a(b)(5)(C)(ii), 8 C.F.R. § 1003.23(b)(4)(ii).

In this case, Arita-Campos never filed a motion to reopen. He argues that this failure resulted from his never receiving notice of the first hearing, and therefore

being unaware of this remedy. Under different circumstances, we might agree. There are, however, several factors that cut against Arita-Campos's position.

Assuming without deciding that he did not receive notice of his original hearing,[2] then Arita-Campos had the ability to file his motion to reopen at any time. But he has not availed himself of this remedy. And although Arita-Campos argues that he was unaware of the availability of a motion to reopen, we are not persuaded. When Arita-Campos was first apprehended in 1994, he was personally served with the OSC. The OSC informed him of the availability of the motion to reopen, so even without notice of the hearing, Arita-Campos was made aware of available post-hearing procedures.

Of course, we are cognizant of the fact that Arita-Campos received the OSC when he was only fourteen years old. We realize that a fourteen-year-old is unlikely to recognize the significance of the OSC and the procedures detailed in that order. But Arita-Campos was not arrested on the order of deportation until ten years later, at which point he was no longer a teenager. He certainly could have discovered his rights within that ten-year

---

[2] Although Arita-Campos vehemently maintains that he never received notice, and the government ardently disputes this contention, we need not resolve this issue to dispose of the case before us. Because the outcome of this case is the same whether or not Arita-Campos received notice of his deportation hearing, we will assume only for the sake of argument that the government failed to provide him with the required notice.

period, especially considering the fact that he has demonstrated at least some acumen with regard to seeking legal protection. In 2003, for instance, he submitted applications for Temporary Protected Status and Employment Authorization, in which he admitted his illegal entry into the country. These filings show that Arita-Campos was not entirely oblivious to legal procedures, and likely could have discovered his rights with regard to a motion to reopen.

But even if this is not the case, thirty-nine days elapsed between Arita-Campos's 2004 arrest and his deportation. Again, assuming without deciding that he is correct in his assertion that he never received notice, Arita-Campos could have filed a motion to reopen during those thirty-nine days. *See, e.g.*, *Hinojosa-Perez*, 206 F.3d at 836 (finding that eight days between arrest and deportation was sufficient time to file a motion to reopen). He did not. Because Arita-Campos never filed a motion to reopen—within ninety days, ten years, or even after his arrest—he failed to exhaust his administrative remedies. Consequently, he fails to satisfy § 1326's first prong.

## B. *Judicial Review*

Nor can Arita-Campos satisfy the second prong of § 1326's requirements—he is unable to show that he was deprived of the opportunity for judicial review of the immigration judge's legal interpretations. The habeas corpus statute, 28 U.S.C. § 2241, is written broadly enough to allow an alien in custody to petition the federal courts for habeas corpus relief. *See INS v. St. Cyr*, 533 U.S. 289,

312-13 (2001). As such, we have held that "an alien is not deprived of judicial review for purposes of [§] 1326(d)(2) as long as he has recourse to relief through a petition for habeas corpus." *Santiago-Ochoa*, 447 F.3d at 1019 (*citing Roque-Espinoza*, 338 F.3d at 729). If a defendant fails to show that he was unable to petition for relief under § 2241, he consequently fails to show that he was deprived of judicial review. *Id.*

In this case, Arita-Campos did not demonstrate that he was deprived of the opportunity for judicial review. He made no attempt to demonstrate that habeas relief was unavailable to him. "The fact that [Arita-Campos] chose not to make the attempt does not mean that he was deprived of all avenues of judicial review of his [deportation] order." *Roque-Espinoza*, 338 F.3d at 729. Therefore, Arita-Campos has also failed to satisfy the second element of § 1326.

## C. Fundamental Unfairness

Finally, we turn to the third showing required under § 1326, fundamental unfairness. To establish fundamental unfairness, a defendant must show both that his due process rights were violated and that he suffered prejudice from the deportation proceedings. *De Horta Garcia*, 519 F.3d at 661; *Santiago-Ochoa*, 447 F.3d at 1019. We first take up the issue of due process.

The unavailability of discretionary relief does not amount to a deprivation of due process. *Khan v. Mukasey*, 517 F.3d 513, 518 (7th Cir. 2008) ("[W]e have repeatedly

held that an alien's right to due process does not extend to proceedings that provide only such discretionary relief because an appeal to discretion is not a substantive entitlement." (internal quotation marks omitted)). In fact, the majority of circuits, including our own, have held that "due process does not [even] encompass a 'right to be informed of eligibility for—or to be considered for—discretionary relief.'" *De Horta Garcia*, 519 F.3d at 661 (*quoting Santiago-Ochoa*, 447 F.3d at 1020). Yet the only deprivation of due process alleged by Arita-Campos is that he was unable to seek voluntary departure. Because availability of voluntary departure is a discretionary decision, *id*. at 662, Arita-Campos has not shown a due process violation.

Nor has Arita-Campos shown that he was prejudiced by the deportation proceedings. In order to establish that he was prejudiced by a deportation proceeding, a defendant must prove that "judicial review 'would have yielded him relief from deportation.'" *Id.* at 661 (*quoting Espinoza-Farlo*, 34 F.3d at 471). Again, the only relief Arita-Campos claims to have been deprived of is voluntary departure. Not only does he fail to satisfy his burden, but also he fails to even attempt to demonstrate that, with notice, he would have been granted relief from deportation. As a result, Arita-Campos has failed to satisfy § 1326's third requirement.

## III. CONCLUSION

Because Arita-Campos cannot establish *any* of the elements required by 8 U.S.C. § 1326, his motion to

dismiss was properly denied. The district court's decision is therefore AFFIRMED.