In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1273

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MANSA N. BAPTIST,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 448 — **James B. Zagel**, *Judge.*

ARGUED JUNE 6, 2014 — DECIDED JULY 17, 2014

Before BAUER, MANION, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Mansa N. Baptist ("Baptist") was first
removed[1] from the United States to Belize in 1998 after he
signed a stipulated removal order. Afterwards, he illegally
reentered the United States several times; each time he was

[1]  When the Illegal Immigration Reform and Immigrant Responsibility Act
("IIRIRA") was enacted in April 1997, the term "removal" was substituted
for the term "deportation." For consistency's sake, we will use the term
"removal" throughout this opinion.

discovered, he was again removed to Belize. In 2005, Baptist illegally entered the United States once more and avoided detection until he was arrested in 2010. Afterwards, he was charged with being illegally present in the United States after having been previously removed, in violation of 8 U.S.C. § 1326(a). Baptist filed a motion to dismiss the indictment. In his motion, he collaterally attacked his 1998 removal under 8 U.S.C. § 1326(d), contending that the removal violated his due process rights. The district court denied Baptist's motion, and he appealed. We affirm the district court's decision.

## I. BACKGROUND

Baptist is a native of Belize who entered the United States as a lawful permanent resident on January 31, 1988. On September 15, 1992, Baptist pleaded guilty to possession of a controlled substance and was sentenced to probation. On February 6, 1995, Baptist was convicted of possession of a controlled substance after a bench trial and was sentenced to probation a second time.[2] On September 23, 1996, Baptist was

---

[2] The original order of probation, probation documents, presentence investigation report, and the official statement of facts for Baptist's 1995 conviction state that he was convicted of possession only. Other documents, however, including the Illinois Department of Corrections' mittimus, automated court records, and the transcript from Baptist's sentencing hearing indicate that he was convicted of possession with intent to deliver. For his 1996 conviction, certified court documents, the presentence investigation report, and the Illinois Department of Corrections' mittimus show that Baptist was convicted of delivery of a controlled substance. However, transcripts from Baptist's sentencing hearing reflect that the judge found Baptist guilty of possession only. Ultimately, whether Baptist's

(continued...)

again convicted of possession of a controlled substance after a bench trial; this time, he was sentenced to five years' imprisonment. At the time, this offense was considered an aggravated felony. INA § 101(a)(43)(B).

After being released on parole, Baptist received a Notice to Appear ("NTA") on October 14, 1998, stating that he had been placed in removal proceedings due to his earlier controlled substance conviction. The NTA asserted that Baptist had been convicted of an offense constituting an aggravated felony drug trafficking offense as well as a controlled substance offense, making him removable under 8 U.S.C. § 1227(a)(2)(A)(iii) (any alien who is convicted of an aggravated felony at any time is removable) and 8 U.S.C. § 1227(a)(2)(B)(i) (any alien who has been convicted of a violation of a law relating to a controlled substance, other than a single offense involving possession of marijuana for one's own use, is removable).

On October 22, 1998, Baptist was given a form titled, "Respondent's Stipulated Request for Order Waiver of Hearing Pursuant to 8 CFR 3.25(b)."[3] The stipulated removal order was written in English, Baptist's native language, as well as Spanish. The document explained Baptist's rights as well as the consequences of signing the form. Relevant portions of the removal order state:

---

[2] (...continued)

1995 and 1996 convictions were for possession or possession with intent to deliver does not affect our analysis. For purposes of this opinion, we will assume that Baptist was convicted of possession only.

[3] The statute is now 8 C.F.R. § 1003.25(b).

2. I have received a copy of the LIST OF FREE LEGAL SERVICE PROVIDERS. I am aware that, pursuant to 8 CFR 240.3, I may be represented by an attorney … . I do not wish to be represented by an attorney … I elect to represent myself in these proceedings.

3. I understand my right to a personal hearing before an immigration judge … . I hereby waive th[is] right[], and request that my removal proceeding[] be conducted solely by way of written record without a hearing.

5. I do not wish to apply for relief from removal … . I am not seeking the relief of … cancellation of removal, … or any other possible relief or other benefits under the Act.

8. I understand the consequences … are that I will be removed from the United States. I make this request voluntarily, knowingly, and intelligently.

10. I waive appeal of the written order of removal from the United States.

11. I have carefully read or have had read to me in my native language this entire document, and fully understand its consequences. I am aware that my eventual removal from the United States will be the result of my signing this document.

Baptist signed the form. The Immigration Judge ("IJ") reviewed the signed stipulated removal order and stated, "I find, based upon my review of the record in this matter, that respondent has entered into this stipulation voluntarily, knowingly and intelligently." (Baptist never appeared before

the IJ; he waived his right to do so when he signed the stipulated removal order.) On October 22, 1998, the IJ ordered Baptist's removal. Baptist was deported to Belize on November 9, 1998; he did not appeal the IJ's order, file a motion to reopen the proceedings, or file a habeas petition.

Sometime before September 2, 1999, Baptist reentered the United States without inspection. On April 2, 2002, he was arrested by Chicago police officers for assault. Police notified the Immigration and Naturalization Service, and Baptist received a Notice of Intent/Decision to Reinstate Prior Order. This notice stated that Baptist was subject to removal based on the fact that he had illegally reentered the United States after having been previously removed, and that the Attorney General intended to reinstate Baptist's 1998 removal order. The notice informed Baptist that he could contest the findings contained therein, but Baptist never did so. He was removed to Belize a second time on May 9, 2002.

On June 12, 2002, Baptist tried to gain entry to the United States by falsely stating that he was a United States citizen. He was apprehended and charged in district court with illegal reentry in violation of 8 U.S.C. § 1326(a). On September 2, 2002, he pleaded guilty; on November 8, 2002, he was sentenced to 37 months' imprisonment. He served his sentence, then was removed to Belize a third time on February 17, 2005.

On December 22, 2005, Baptist illegally reentered the United States once again, this time by displaying someone else's Indiana driver's license to border patrol officers in California. Baptist managed to evade detection for several years, but was arrested by Chicago police officers on

August 30, 2010, for possession of cannabis. The police informed Immigration and Customs Enforcement of Baptist's presence in the United States. Baptist was indicted on June 12, 2012, and charged with being illegally present in the United States after being previously removed or deported in violation of 8 U.S.C. § 1326(a).

On October 10, 2012, Baptist was arrested; thereafter, he was held in custody.

Baptist entered a conditional guilty plea to the charges, but reserved his right to appeal. He then filed a motion collaterally attacking his 1998 removal under 8 U.S.C. § 1326(d), arguing that the removal violated his due process rights. He claimed the removal was fundamentally unfair since it was based on the stipulated removal order he signed without the assistance of counsel or the opportunity to appear before an IJ. He also asserted that if he had not signed the stipulated removal order, he could have applied for relief from deportation under § 212(c) of the former Immigration and Nationality Act.

The government responded to Baptist's motion and asserted that his removal was not fundamentally unfair. Since Baptist voluntarily signed the stipulated removal order, the government argued that he knowingly waived his right to counsel as well as a hearing before an IJ. Furthermore, the government argued that Baptist suffered no prejudice as a result of his removal, because he was ineligible for relief from removal anyway. The government also stated that Baptist's challenge was without merit since he failed to exhaust his administrative remedies.

On July 2, 2013, the district court denied Baptist's motion. It found that Baptist's removal was not fundamentally unfair, because he willingly signed the stipulated removal order, waived his rights, and failed to demonstrate the requisite prejudice. The court stated: "[t]he stipulated [removal] order fully advised [Baptist] of his rights, … [and Baptist] doesn't claim [he was] coerced or tricked into signing the form … . The stipulation says that he had read [the form] in his native language, [and] fully understood its consequences … . He provides no grounds as to why his waiver was not considered or intelligent … ."

Baptist now appeals the denial of his motion to dismiss.

## II. DISCUSSION

This court reviews de novo the denial of a motion to dismiss an indictment under 8 U.S.C. § 1326(a). *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010); *United States v. Santiago-Ochoa,* 447 F.3d 1015, 1019 (7th Cir. 2006). Section 1326 makes it a crime for a removed alien to enter, attempt to enter, or be found in the United States without the consent of the Attorney General. 8 U.S.C. § 1326 (West 2014). Since a prior removal is necessary for a conviction under § 1326, an alien may collaterally attack the underlying removal pursuant to the due process clause. *United States v. Mendoza-Lopez,* 481 U.S. 828, 837–38 (1987). The defendant bears the burden of proving that the deportation order was defective. *Arita-Campos*, 607 F.3d at 490. In order to successfully do so, an alien must demonstrate that (1) he exhausted all administrative remedies that were available to him; (2) the deportation proceedings improperly deprived him of the opportunity for judicial review; and (3)

the entry of the order was "fundamentally unfair." 8 U.S.C. § 1326(d). While we have yet to expressly state that all three requirements must be met before an alien can successfully collaterally attack a prior removal, we have implied as much. *See, e.g., Santiago-Ochoa,* 447 F.3d at 1019–20; *United States v. Lara-Unzueta,* 735 F.3d 954, 961 (7th Cir. 2013).

In reaching its decision to deny Baptist's motion to dismiss, the district court focused primarily on the fundamental fairness of Baptist's removal. The court concluded that Baptist's 1998 removal was not fundamentally unfair since Baptist knowingly and voluntarily waived his rights by signing the stipulated removal order. The court declined to reach 8 U.S.C. § 1326(d)'s other requirements.

Since this case hinges on the fundamental fairness of Baptist's 1998 removal proceedings and on the stipulated removal order he signed, we begin our analysis there.

The term "fundamentally unfair" is never defined in 8 U.S.C. § 1326(d); however, to demonstrate fundamental unfairness, the defendant must show that there was a due process violation and that he suffered prejudice as a result of the removal proceedings. *Santiago-Ochoa,* 447 F.3d at 1019; *United States v. Espinoza-Farlo,* 34 F.3d 469, 471 (7th Cir. 1994).

### A. Due Process Violation

In *Haitian Refugee Ctr. v. Smith,* 676 F.2d 1023, 1036 (5th Cir. 1982), the Fifth Circuit stated that "even aliens who have entered the United States unlawfully are assured the protections of the fifth amendment due process clause." While due process rights can be waived, "such a waiver must be made

knowingly and voluntarily." *Nose v. Attorney Gen. of the U.S.*, 993 F.2d 75, 79 (5th Cir. 1993).

Under well-established principles of contract law, we usually assume that an individual knowingly and voluntarily waived his rights if he signed a waiver. 27 Williston on Contracts § 70:113 (4th Ed. 2009) ("One who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them."). However, this is not a contract case; Baptist's constitutional right to due process is implicated, and deportation is a serious penalty. When constitutional rights are implicated, more is required; "[m]eticulous care must be exercised lest the procedure by which [Baptist] is deprived of that liberty not meet the essential standards of fairness." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945).

In this case, Baptist signed a stipulated removal order, in which he waived his right to appear before an IJ and to appeal his removal. Stipulated removal orders are governed by 8 C.F.R. § 1003.25(b), which states:

> An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien … and the Service. The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent. The stipulated request and

required waivers shall be signed on behalf of the government and by the alien and his or her attorney or representative, if any … . A stipulated order shall constitute a conclusive determination of the alien's deportability or removability from the United States.

After reviewing the signed stipulated removal order, the district court concluded that Baptist knowingly and voluntarily waived his rights. The court noted that the order was written in English, Baptist's native language, and expressly stated, "I understand the consequences … are that I will be removed from the United States. I make this request voluntarily, knowingly, and intelligently."

Baptist contends, however, that his waiver was not knowing and voluntary, since he says he never read the stipulated removal order before signing it. He argues that the Ninth Circuit's decision in *United States v. Ramos*, 623 F.3d 672 (9th Cir. 2010), should guide our decision here, but a key issue distinguishes *Ramos* from this case. In *Ramos*, the defendant signed a stipulated removal order, in which he waived his right to appeal and to counsel. *Id*. at 677. He was deported and later appealed, claiming that he had not knowingly and intelligently waived his rights. *Id.* at 679. The Ninth Circuit agreed, concluding that Ramos's waiver was not "considered or intelligent." *Id.* at 680. The court noted that Ramos spoke only Spanish, that the stipulated removal order was never orally explained to him in Spanish, and that the written Spanish translation provided to Ramos was inadequate to ensure that Ramos understood what rights he was waiving. *Id.* at 680–81.

Here, by contrast, the stipulated removal order presented to Baptist was written in English, Baptist's native language. The order clearly stated that Baptist acknowledged receiving a list of free legal service providers and was informed that he could be represented by an attorney, but instead chose to represent himself. The form also stated, "I fully understand … my right to a  personal hearing  before an immigration judge … . Knowing this, I hereby waive th[is] right[], and request that my removal proceedings be conducted solely by way of written record without a hearing."

The form also contained multiple acknowledgments that defendant was aware of his rights, but knowingly and intelligently waived them. Provision Eight states, "I understand the consequences of this Stipulated Request for Order, Waiver of Hearing are that I will be removed from the United States. I make this request voluntarily, knowingly, and intelligently." Provision Eleven states, "I have carefully read or have had read to me in my native language this entire document, and fully understand its consequences. I am aware that my eventual removal from the United States will be the result of my signing this document."

Baptist's failure to read the form is insufficient to prove his waiver invalid. It is uncontested that Baptist could read and understand the form before him, since the form was in English, his native language. It is also undisputed that the form explained Baptist's rights, including his right to counsel, to a hearing, and to appeal, as well as the fact that he was choosing to waive those rights. The bottom of the form expressly stated that defendant had read and understood the form as well as

the rights he was waiving, and Baptist signed the form. Though Baptist contends that he was told to "hurry up and sign [the form] if he wanted to go back to Belize," he never asserts that anyone tricked or pressured him into signing the form; instead, he argues that he should have been represented by counsel or had the form orally explained to him before his waiver could be considered knowing and voluntary.

But 8 C.F.R. § 1003.25(b) contains no requirement that an alien must be represented by counsel or that a stipulated removal order must be orally explained to him. Instead, the statute merely requires the IJ to "determine that the alien's waiver is voluntary, knowing, and intelligent" if the alien is unrepresented by counsel. The IJ did so here, stating, "I find, based upon my review of the record in this matter, that [Baptist] has entered into this stipulation voluntarily, knowingly and intelligently."

Baptist bore the burden of showing that his 1998 removal was fundamentally unfair, but he failed to put forth enough evidence to convince us that the stipulated removal order he signed was invalid. Therefore, we find no due process violation.

## B.  Requisite Prejudice

Even if we were to assume that Baptist's due process rights were violated, he still "must establish that [he] was prejudiced, that is, that the error likely affected the result of the proceedings." *Alimi v. Gonzales,* 489 F.3d 829, 834 (7th Cir. 2007). Baptist failed to do so here.

Before April 1996, the Attorney General, in his discretion, could waive deportation for an alien who had been convicted of a crime considered an "aggravated felony" as long as the alien served a term of imprisonment of less than five years. INA § 212(c); 8 U.S.C. § 1182(c). However, on April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted and made relief under INA § 212(c) unavailable to all aliens who had been convicted of aggravated felonies. Pub. L. 104–132, 110 Stat. 1214. On April 1, 1997, IIRIRA repealed INA § 212(c) and replaced it with a new form of relief called "cancellation of removal." Pub. L. 104–208, 110 Stat. 3009–546 (1996); 8 U.S.C. § 1229b. However, aliens convicted of aggravated felonies were ineligible for this form of relief. INA § 240A; 8 U.S.C. § 1229b.

In *I.N.S. v. St. Cyr*, the Supreme Court limited the scope of IIRIRA, holding that aliens who pleaded guilty before the statute was passed could still obtain relief from removal under INA § 212(c); the Court, however, said nothing about those aliens who went to trial and were convicted. 533 U.S. 289, 326 (2001). We have squarely addressed this issue in our circuit and have held that waivers under INA § 212(c) are available only to aliens who pleaded guilty prior to the enactment of AEDPA and IIRIRA, not to aliens who went to trial. *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004). In *Canto v. Holder*, we explained that eligibility for INA § 212(c) waivers should not extend to aliens who did not plead guilty prior to the enactment of AEDPA and IIRIRA since they did not "rel[y] upon th[e] likelihood of receiving discretionary relief under section 212(c) in deciding whether to forgo their right to a

trial … ." 593 F.3d 638, 642 (7th Cir. 2010) (citing *I.N.S. v. St. Cyr*, 533 U.S. at 325).

Here, Baptist was convicted in 1995 and 1996 of possession of a controlled substance. Under the law in effect at the time of his removal in 1998, Baptist's prior possession offenses qualified as aggravated felonies. *See, e.g. Matter of Yanez-Garcia*, 23 I&N Dec. 390, 398 (BIA 2002) (holding that felony possession qualifies as an aggravated felony); *Fernandez v. Mukasey*, 544 F.3d 862, 874 (7th Cir. 2008) (holding that multiple state possession convictions make an alien removable as an aggravated felon). Though the law has since changed and Baptist's possession offenses no longer constitute aggravated felonies under 8 U.S.C. § 1101(a)(43)(B), the law in effect at the time of Baptist's challenged removal is what matters to our analysis. Since Baptist's offenses constituted aggravated felonies in 1998, Baptist was neither eligible for cancellation of removal, nor could he have applied for discretionary relief under INA § 212(c).

The Supreme Court's decision in *St. Cyr* cannot save Baptist's prejudice claim either. Section 212(c) waivers are only available to aliens who pleaded guilty prior to the enactment of AEDPA and IIRIRA; Baptist did not plead guilty to his 1995 and 1996 possession offenses, but was convicted after bench trials. Since Baptist cannot demonstrate the prejudice necessary to sustain a collateral attack on his 1998 deportation, his claim must fail.

## C. Exhaustion of Administrative Remedies and the Opportunity for Judicial Review

Since Baptist failed to establish that his removal proceedings were fundamentally unfair, we need not reach 8 U.S.C. § 1326(d)'s other requirements—exhaustion of administrative remedies and the opportunity for judicial review.[4]

## III. CONCLUSION

Baptist bore the burden of proving that his 1998 removal proceedings were defective under 8 U.S.C. § 1326(d), but could not do so. He failed to establish that his removal proceedings were "fundamentally unfair," so we AFFIRM the decision of the district court.

---

[4] Even if we were to do so, it would not assist Baptist. To satisfy 8 U.S.C. § 1326(d), "an alien must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." *United States v. Cazares*, 2011 WL 612723 *3 (C.D. Ill. 2011) (citing *Arita-Campos,* 607 F.3d at 491).

Baptist did none of these; he never appealed his sentence, filed a motion to reopen, or filed a habeas petition. Baptist argues that since he never read the stipulated removal order before signing it, was not provided with an attorney, and was not orally informed of his rights, he was unaware of his right to appeal, and so should not be faulted with failure to exhaust his administrative remedies.

But the stipulated removal order clearly outlined Baptist's right to appeal. When Baptist signed the form, he waived that right; his failure to read the form does not exempt him from 8 U.S.C. § 1326(d)'s exhaustion requirement.