In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-1964

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELEAZAR HERNANDEZ-PERDOMO,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cr-744 — **Elaine E. Bucklo**, *Judge.*

———————————

No. 19-2113

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ISMAEL RANGEL-RODRIGUEZ

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cr-581 – **Matthew F. Kennelly**, *Judge.*

———————————

ARGUED DECEMBER 6, 2019— DECIDED JANUARY 23, 2020

_____

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Ismael Rangel-Rodriguez and Eleazar Hernandez-Perdomo are both Mexican citizens who have never been lawfully admitted to the United States. Several years ago, immigration authorities served both of them with Notices to Appear ("NTA") for removal proceedings. These NTAs—like many—were defective because they did not list a date or time for an initial removal hearing. For different reasons, Rangel and Hernandez were not present at their respective removal hearings, and the immigration judges ordered them removed *in absentia*. United States Immigration and Customs Enforcement ("ICE") eventually enforced these orders and removed both men to Mexico, but they each illegally returned to the United States and were indicted for illegal reentry in violation of 8 U.S.C. § 1326(a). In light of the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), they moved to dismiss their respective indictments by collaterally attacking their underlying removal orders under 8 U.S.C. § 1326(d) based on the defective NTAs. The district courts denied their motions, and each defendant entered a conditional plea of guilty to the illegal reentry charge and reserved his right to appeal the denial of the motion to dismiss the indictment. We have consolidated the cases for decision.

We conclude that Rangel and Hernandez have failed to demonstrate that they satisfy any of the requirements set out in § 1326(d). We therefore affirm the judgments.

## I. Background

### A. Ismael Rangel-Rodriguez

In November 2010, police arrested Rangel for driving on a suspended license and several other offenses. The government served him that same day with an NTA announcing removal proceedings. This NTA ordered Rangel to appear before an immigration judge on "a date to be set at a time to be set." Rangel ultimately learned the date and time of his upcoming hearings, though, because he appeared at three hearings via video conference in late winter and early spring of 2011, while he was in ICE custody. Around March of 2011, Rangel was released on bond. In January of 2012, however, Rangel was arrested for driving under the influence and taken into custody. His next hearing took place on February 22, 2012. Because Rangel remained in state custody, he did not attend this hearing and the immigration judge entered an order of removal *in absentia*. The record does not reveal whether Rangel ever knew of this particular hearing date.

On September 5, 2013, following a conviction on his DUI charge and a year in state prison, Rangel was released to ICE custody. The next day, an ICE officer wrote in Rangel's alien-registration file that Rangel did not wish to reopen his case. Although the alien-registration file entry states that Rangel received a "free legal aid list," the record does not reveal the extent to which Rangel was informed of his right to reopen. ICE removed Rangel from the United States on September 24, 2013, and Rangel reentered two days later. On October 2, ICE reinstated Rangel's removal order and removed him from the United States a second time on March 29, 2014.

At some point following his second removal, Rangel reentered the United States a third time. Chicago Police arrested him in August of 2018, and a grand jury then indicted him on one count of illegal reentry under 8 U.S.C. § 1326(a). Rangel filed a motion to dismiss the indictment, which the district court denied. Following Rangel's entry of a conditional plea of guilty, the district court sentenced Rangel to 23 months' imprisonment.

**B. Eleazar Hernandez-Perdomo**

Hernandez tells a similar story. In 2010, ICE took him into custody and personally served him with an NTA that, like Rangel's, omitted the date and time of his first hearing before an immigration judge. This NTA correctly reflected Hernandez's address at that time—on Sheridan Road in Highwood, Illinois.

Later that same day, Hernandez was released from ICE custody on his own recognizance. His Order of Release directed him to report in person to an immigration officer on September 7, 2010. The Order of Release further instructed: "You must not change your place of residence without first securing written permission from the immigration officer listed above."

On August 6, 2010, the Executive Office for Immigration Review ("EOIR") sent to Hernandez's Sheridan Road address a Notice of Hearing in Removal Proceedings to remedy the lack of date and time information in the initial NTA. This Notice set his hearing for January 3, 2012. Hernandez, however, never received this Notice because he had moved to a new apartment. Consequently, the Notice was returned to EOIR as undeliverable. Hernandez asserts that, on September 7, 2010,

he reported to the immigration officer as required, and at that time he completed and returned to the officer a change-of-address form identifying his new address on Onwentsia Avenue in Highland Park, Illinois.

On January 27, 2011, the EOIR sent Hernandez another Notice of Hearing, this one moving up proceedings by ten months, to March 2, 2011. Despite Hernandez's claimed submission of his change-of-address form, the EOIR sent this Notice of Hearing to his outdated, Sheridan Road address. As with the prior Notice, it was returned as undeliverable.

Because he was unaware of the March 2 hearing, Hernandez did not appear. The immigration judge conducted the removal hearing *in absentia* and ordered him removed. Three months later, ICE agents arrested Hernandez at his Onwentsia address. ICE removed him eight days after his arrest.

As with Rangel, Hernandez's alien-registration file entry states that Hernandez received a "free legal aid list," but the record does not reveal the extent to which Hernandez was informed of his right to reopen. Unlike in Rangel's case, the alien-registration file does not comment on Hernandez's desire, or lack thereof, to reopen the proceedings against him.

In 2018, Hernandez was transferred back into ICE custody after being identified during a traffic stop. A grand jury indicted him on one count of illegal reentry. Like Rangel, Hernandez filed a motion to dismiss the indictment, which the district court denied. Hernandez entered a conditional plea of guilty, and the district court sentenced Hernandez to time served plus one year of supervised release.

## II. Discussion

We review de novo a district court's denial of a defendant's motion to dismiss an indictment. *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010). As Rangel's and Hernandez's appeals raise identical legal issues challenging the district courts' decisions to deny their motions to dismiss, we analyze the arguments they submit together.

8 U.S.C. § 1326 makes it a crime for a removed noncitizen to reenter, or attempt to reenter, the United States without the consent of the Attorney General. In *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), the Supreme Court held that a defendant charged under this statute has a due process right to challenge the underlying order of removal. In 1996, Congress amended the statute to codify the holding of *Mendoza-Lopez* by adding subsection (d), which imposes three requirements on an alien seeking to challenge the validity of his or her underlying removal order. The alien must have "exhausted any administrative remedies that may have been available to seek relief against the order," the removal proceedings must have "improperly deprived the alien of the opportunity for judicial review," and the entry of the removal order must be "fundamentally unfair." 8 U.S.C. § 1326(d)(1)–(3). The alien bears the burden of proving the underlying removal order was defective. *United States v. Baptist*, 759 F.3d 690, 695 (7th Cir. 2014). Although we have never expressly stated that an alien must satisfy all three elements of § 1326(d) to collaterally attack his or her removal order, we have implied that this is so. *United States v. Alegria-Saldana*, 750 F.3d 638, 641 (7th Cir. 2014). We need not decide this issue today, though, because Rangel and Hernandez have failed to satisfy any of the three elements.

Rangel and Hernandez base their challenges on the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The *Pereira* Court addressed the "narrow question" whether an NTA that omits the time or place of an alien's removal hearing triggers the stop-time rule of the Illegal Immigration Reform and Immigrant Responsibility Act, thus terminating the period of continuous physical presence in the United States necessary for an alien to be eligible for discretionary cancellation of removal. *Id.* at 2110. The Court ruled that it did not because the missing information prevents an NTA from satisfying the statutory definition in 8 U.S.C. § 1229(a). *Id.* at 2113–14. Like many other litigants, Rangel and Hernandez both argued at the district court that a deficient NTA deprived an immigration court of jurisdiction, and thus their removal enters were void and could not support their respective convictions for illegal reentry. We rejected this jurisdictional argument, however, in *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019), where we held that an NTA's failure to comply with § 1229(a) was a claim-processing rule subject to waiver and forfeiture. *Id.* at 963. Defendants thus abandon their jurisdictional arguments on appeal. Instead, they now argue that, because they received deficient NTAs, they meet the statutory and constitutional requirements for a collateral attack of their prior orders of removal under 8 U.S.C. § 1326(d).

## A. Exhaustion & Judicial Review

Rangel and Hernandez contend they have exhausted their available administrative remedies, or should be excused from this requirement, because their challenges would have been futile at the time of their removal proceedings, as the Board of Immigration Appeals and every court to consider the

question had previously condoned the "two-step procedure" to remedy deficient NTAs. *See, e.g., Dababneh v. Gonzales*, 471 F.3d 806, 809–10 (7th Cir. 2006) (allowing this procedure). Even assuming that a futility exception applies to immigration exhaustion requirements, though, *Pereira* did not change the administrative remedies available to Rangel and Hernandez after the immigration judges ordered them removed *in absentia*. The solution for both defendants was the same: they both could have moved to reopen their removal proceedings as soon as they became aware of their respective removal orders, likely when they were taken into ICE custody for physical removal. Neither did so.

We have held that a motion to reopen is an "available" administrative remedy for purposes of § 1326(d)(1). *Arita-Campos*, 607 F.3d at 492. Ordinarily, an alien must file a motion to reopen within ninety days of the entry of a final decision. 8 U.S.C. § 1229a(c)(7)(C); 8 C.F.R. § 1003.23(b)(1). But if the underlying order was entered *in absentia* because the alien was in custody at the time of his hearing—as in Rangel's case—or he did not receive notice of the proceedings—as in Hernandez's—then the alien may instead move to reopen that removal order "at any time." 8 U.S.C. § 1229a(b)(5)(C)(ii); *Arita-Campos*, 607 F.3d at 492. Likewise, if Hernandez and Rangel had filed motions to reopen, they could have obtained judicial review of the denial of those motions or of the final removal orders entered after a proper hearing. They were thus not "improperly deprived" of judicial review, 8 U.S.C. § 1326(d)(2), they just never sought it. *See United States v. Larios-Buentello*, 807 F.3d 176, 178 (7th Cir. 2015).

Rangel and Hernandez argue that the government failed to notify them of the option of a motion to reopen, but "aliens

are presumed capable of researching generally available remedies." *Alegria-Saldana*, 750 F.3d at 641. They attempt to distinguish *Alegria-Saldana* because, there, immigration authorities undisputedly informed the alien of his right to appeal. *See id.* One cannot read our decision in *Alegria-Saldana* as so limited: we also explained the alien had not exhausted his opportunity to file a motion to reopen or to seek habeas relief, with no indication that authorities ever informed the alien of these remedies. *Id.* Defendants also try to cabin the reach of our ruling in *Alegria-Saldana* by arguing that the immigration judge may permissibly forgo providing guidance only about the availability of a separate habeas suit. This attempt, though, does not persuade us. Surely, a lay person would have a far easier time understanding the explicit statutory provision for reopening an *in absentia* order through § 1229a(b)(5) than the habeas corpus remedy under 28 U.S.C. § 2241 and the common law, *INS v. St. Cyr*, 533 U.S. 289 (2001). *Alegria-Saldana* does not suggest that an immigration judge has a duty to inform an alien of direct remedies but not more obscure, collateral ones.

Rangel and Hernandez also contend this interpretation of *Alegria-Saldana* contradicts rulings of the Second and Third Circuits, which have held that the government violates the Due Process Clause by misleading an alien into believing he has no opportunity for judicial review. *See United States v. Charleswell*, 456 F.3d 347 (3d Cir. 2006); *United States v. Lopez*, 445 F.3d 90 (2d Cir. 2006) (Sotomayor, J.). As neither defendant presented this argument to the district court or in their opening briefs, they have both waived it. *See United States v. Dehaan*, 896 F.3d 798, 808 n.4 (7th Cir. 2018).

Even if it were not waived, though, these cases are inapposite to the circumstances presented here. In *Charleswell* and *Lopez*, the government did not merely fail to notify the defendants of their opportunities for judicial review, but rather presented affirmative, misleading (albeit technically correct) statements. In *Charleswell*, a reinstatement order read, "You may contest this determination by making a written or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge." 456 F.3d at 356. An alien does, however, have a statutory right to direct judicial review in the appropriate court of appeals pursuant to 8 U.S.C. § 1252(a)(5). *Id.* at 357. Similarly, in *Lopez*, the government told an alien he was not eligible for review by the Board of Immigration Appeals under § 212(c) of the Immigration and Naturalization Act, even though that relief was still available through a petition for habeas corpus. 445 F.3d at 92–93. In both these cases, the government informed aliens that certain relief was unavailable, when in fact is was available through a different avenue. These statements excluding forms of relief, the courts reasoned, mislead an alien to believe that he has no opportunity for judicial review. *Charleswell*, 456 F.3d at 357; *Lopez*, 445 F.3d at 99–100. Indeed, such "affirmative misstatements" are more problematic than omissions because they "function[] as a deterrent to seeking relief." *Charleswell*, 456 F.3d at 357 (quoting *Lopez*, 445 F.3d at 99).

Rangel and Hernandez argue that their NTAs misled them by saying they could seek review "at the conclusion of [their] hearing[s]," without also listing other available options for relief, such as a motion to reopen. Thus, although the statement on their NTAs was factually accurate, the defendants argue that they were misled to believe that they could no longer contest their removal orders because they were not present at

their hearings and missed their opportunity. The NTAs, though, did not list any restrictions on an alien's access to relief: they merely failed to state all of the possible options. Neither the Second nor Third Circuit have found the lack of full disclosure sufficient to collaterally attack a removal order, *see Charleswell*, 456 F.3d at 355–56 (reserving question); *Lopez*, 445 F.3d at 96 (rejecting argument), and therefore our interpretation of *Alegria-Saldana* is not inconsistent.

The defendants also argue that their time in ICE custody was so brief—Rangel spent 19 days there after the entry of his removal order, and Hernandez, only 8—that filing a motion to reopen was not feasible. True, in *Arita-Campos*, the Court deemed 39 days in custody, a period significantly longer than the time either defendant spent in this case, sufficient time to file a motion to reopen. 607 F.3d at 492. Other circuits, though, have held that the short time the defendants spent was enough. *See United States v. Hinojosa-Perez*, 206 F.3d 832, 836 (9th Cir. 2000) (deeming 8 days sufficient time to file a motion to reopen).

In any event, the number of days in custody is irrelevant because an alien may file a motion to reopen "at any time." 8 U.S.C. § 1229a(b)(5)(C)(ii). The parties dispute how far that language goes. The government argues that the language "at any time" in § 1229a(b)(5)(C)(ii) means what it says—"at any time." Under that literal interpretation, the government argues that Rangel and Hernandez could have filed a motion on the day of oral argument. Defendants, on the other hand, argue that they were permitted to file their motions to reopen only until their orders of removal were reinstated, citing to 8 U.S.C. § 1231(a)(5). We need not resolve the precise time when a motion to reopen becomes unavailable, however, because

our case law makes clear that Rangel and Hernandez may have moved to reopen at least until the time they reentered the country, including while they were in Mexico after their removals. *See Cordova-Soto v. Holder*, 732 F.3d 789, 794–95 (7th Cir. 2013). Rangel and Hernandez thus had a sufficient amount of time to file a motion to reopen, and the fact that they both were only in ICE custody for a brief time has no bearing on whether the motion to reopen was available to them.

### B. Fundamental Unfairness

Rangel and Hernandez argue that their removal proceedings were fundamentally unfair for purposes of 8 U.S.C. § 1326(d)(3) because of their deficient NTAs. To establish fundamental unfairness, we have required a defendant to show the removal proceedings (1) violated the alien's due process rights, and (2) caused the alien to suffer prejudice. *Arita-Campos*, 607 F.3d at 493. To satisfy both prongs of this analysis, an alien must demonstrate that he or she was entitled to non-discretionary relief from removal. *See id.* We have held that aliens have no liberty interest in discretionary relief, and there can be no prejudice unless "judicial review 'would have yielded him relief from deportation.'" *Id.* (quoting *United States v. De Horta Garcia*, 519 F.3d 658, 661 (7th Cir. 2008)).

Defendants assert that, under this court's decision in *Ortiz-Santiago*, the immigration judge would have been obligated to quash their NTAs, and this qualifies as mandatory relief from removal. In *Ortiz-Santiago*, we did recognize the commonly-utilized "two-step procedure" of sending a deficient NTA and later remedying it "may be grounds for dismissal of the case." *Ortiz-Santiago*, 924 F.3d at 962–63. We also said, though, that this is a "curable lapse." *Id.* at 965. "If Ortiz-

Santiago had raised a prompt objection to the Notice …. [a] new, compliant Notice could have issued, and the case could have proceeded." *Id.* Catching the errors in the deficient NTAs would not have led to non-discretionary relief from removal in either Hernandez's or Rangel's respective cases. Rather, if Hernandez or Rodriguez were to have alerted the immigration court of the NTA's omissions, ICE could have proceeded with removal by simply serving a new, compliant NTA. As both of the defendants have failed to identify any other non-discretionary relief for which they would have been eligible had they received a compliant NTA,[1] they have failed to demonstrate that the removal proceedings were fundamentally unfair.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the district courts' judgments.

---

[1] Hernandez offers, in a footnote, that he might have been eligible for voluntary departure, but rightly recognizes that denial of this discretionary relief is not enough to prove that removal proceedings were "fundamentally unfair" under § 1326(d)(3). *See Arita-Campos*, 607 F.3d at 493.